SIMS v. SOUTHERN SURETY CO.
(No. 1425; March 27, 1928; 265 Pac. 450)

*John P. Rusk*, for appellant.

*James A. Greenwood*, for respondent.

BLUME, Chief Justice.

Albert N. Sims brought this action against the Southern Surety Company. The trial court found that plaintiff had failed to submit satisfactory proof of his claim, dismissed his petition and entered judgment for the defendant. From this judgment the plaintiff appeals. The parties will be referred to herein as in the case below.

One Raymond George entered into a contract with the Highway Department for the construction of a highway in Weston County, Wyoming, known as Federal Aid Projects No. 117 and No. 27-B. George defaulted, and the work under the contract was taken over by the defendant, the Southern Surety Company, which thereafter employed White & Johnston to complete it. That firm may, for the purposes of this case, be considered as merely the agents of the Southern Surety Company. One R. B. Sims, nephew

of Albert N. Sims, and agent of White & Johnston, made a contract with plaintiff to help in finishing the work on the highway above mentioned. The nature of the contract is in dispute. Plaintiff claims that he was to receive $11 per day for his own time and labor and for the use of his teams and equipment, or a total of $1452.00. He further asks to recover for certain work and labor performed in connection with the highway-construction above mentioned, namely, by one John Peterson, in the sum of $325; by W. O. Nuttall, in the sum of $238; by Otto Brondell, in the sum of $94; by Della Sims, in the sum of $312; by Gladys M. Sims, in the sum of $156, making a total of $2577, the petition alleging that these parties were employed by the defendant on this work, that they earned the respective amounts above specified, and that they have assigned their claims to the plaintiff. The defendant denies the making of such contract with plaintiff. It claims that the work and labor done by the plaintiff and by the other workers specified in the petition was done, and that plaintiff's horses and equipment were furnished, pursuant to a sub-contract under which plaintiff was to complete a certain section of such highway-work, receiving as compensation a certain amount for each yard of dirt or rock moved by him. Other defenses, including the defense of payment, were set up, but it is not necessary to consider them, for the reasons that will appear herein. It is not controverted, and the case has been submitted on the theory, that if plaintiff was in fact a sub-contractor, as above mentioned, he cannot recover herein. But it is earnestly contended that the judgment of the trial court is not supported by the evidence on that issue. That is the only point necessary to be determined and we shall accordingly direct our attention thereto.

Plaintiff testified that he was employed as above mentioned in the latter part of May, 1923; that he arrived in Weston County and commenced to work on June 10, 1923, and worked continuously for 132 days; that it was originally agreed that plaintiff should have the option to work by the

day or to receive compensation at a certain rate for each yard of dirt or rock moved; that when plaintiff arrived in Weston County he found that the character of the work had been misrepresented; that he, accordingly, refused to take any sub-contract; that it was thereupon agreed between him and R. B. Sims,—the latter acting for the defendant and for White & Johnston as superintending engineer for the work—that plaintiff should act as "straw boss," have charge of a crew of men, and receive $11.00 per day as already stated. He further testified that he went to work pursuant to this agreement; that R. B. Sims would hire men and send them to him, would arrange their wages and dismiss them from employment at his discretion; that he would order where the various teams should work and in a general way would direct the work as he pleased. It further appears that plaintiff conducted a boarding house in his own name, which was under the direct control of his wife, Della Sims, assisted by his daughter, Gladys M. Sims. The supplies therefor were apparently furnished by the A. M. Nichols Supply Company at Newcastle. Asked why he kept this boarding house, plaintiff told the court that this was done for the convenience of R. B. Sims, and he explained that it was kept for the benefit of all the men working on the highway-construction and not only for those under his direct supervision. It appeared from his cross-examination that he received some money from R. B. Sims. When he was asked to state the amount thereof, he answered that it was approximately $500 or $600. Checks, however, issued directly to him showed a total of $1817.12. Plaintiff explained that all of this money was deposited by him in the bank and was paid out by him to workmen at the request of R. B. Sims; that this arrangement was made because the men working under plaintiff disliked R. B. Sims and that it was, accordingly, thought best to have the plaintiff rather than R. B. Sims make these payments. This, we think, is a sufficient outline of plaintiff's testimony. It would subserve no good purpose to go into greater details.

Plaintiff was to some extent corroborated by his wife and daughter, whose testimony, however, it is not necessary to set out at length.

R. B. Sims testified on behalf of the defendant, his deposition having been taken at Denver, Colorado. He stated in substance that he was superintendent of construction on the highway-work above mentioned; that the work was substantially all done under sub-contracts; that he helped all of the sub-contractors to get their labor and equipment and that the work of the sub-contractors was done under his supervision; that the compensation of these sub-contractors was by the cubic yard for material moved; that the plaintiff was employed as sub-contractor to complete a portion of the highway work above mentioned by furnishing all necessary labor and material to do so, plaintiff's compensation to be computed upon the basis of dirt and rock moved by him, at the rate of 19c per cubic yard of common dirt, 48c per cubic yard for loose rock, and 80c per cubic yard for solid rock; that all the men working under plaintiff were hired by the latter and not by the defendant; that he paid plaintiff directly the sum of $1817.12; that he also, at plaintiff's request, paid the Nichols Supply Company and workmen employed by plaintiff; the total sum paid to or for the benefit of plaintiff, amounting to over $5000.

Among the checks issued to and cashed by plaintiff was one for $200 which purported to be for "part of June estimate." Another check given to and cashed by plaintiff for $100 purports to be for "part of June estimate." Plaintiff further received a check for the sum of $768.62, and he at the same time gave a receipt which reads as follows: "Received of White & Johnson $768.00 (Seven sixty eight & 62/100 Dollars for August estimate. (Signed) A. M. Sims." These payments "for estimates" are consistent with the testimony given by R. B. Sims, but entirely inconsistent with the testimony of plaintiff that he was to receive pay at a certain rate per day. The receipt just mentioned is substantially an acknowledgment in writing by plaintiff

that he was a sub-contractor as stated in the testimony of R. B. Sims. We are unable to perceive how, in view of that fact, and in view of the specific testimony of R. B. Sims, without reference to other facts and circumstances corroborative thereof, it can be claimed that there was no substantial testimony to support the judgment of the trial court, and we cannot, of course, under a well-known rule, reverse the judgment herein if it is supported by substantial evidence. Counsel for the plaintiff claims that the rule should not be strictly applied in the case at bar because R. B. Sims did not testify in the presence of the court. But the judgment of the court was rendered after the testimony on behalf of the defendant was compared with, and interpreted and considered in the light of, that for the plaintiff whose witnesses appeared upon the witness stand, and we can accordingly see no reason why the rule should not be fully applicable herein. The fact that some of plaintiff's testimony was not contradicted directly, but indirectly only; that the boarding house was used for all the men working under R. B. Sims; that the latter hired and discharged men at pleasure, and gave general directions as to teams, might, perhaps, be circumstances proper to be argued to a jury or the trial court, but while they might affect the credibility, they do not alter the substantial character, of the evidence in support of defendant's theory, and since the trial court has accepted that evidence as true, we cannot interfere. The judgment must, accordingly, be affirmed and it is so ordered.

*Affirmed.*

KIMBALL and RINER, JJ., concur.