STATE BOARD OF LAW EXAMINERS v. STRAHAN
(No. 1720; March 15, 1932; 8 Pac. (2d) 1091)

See also 3 Pac. (2d) 79.

For the plaintiff there was a brief by *James A. Greenwood,* Attorney General, *Richard J. Jackson,* Deputy Attorney General and *George W. Ferguson,* Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by *Mr. Jackson* and *Mr. Thomas M. McKinney,* of Basin, Wyoming.

For the respondent there was a brief by *L. S. Strahan*, of Lovell, Wyoming, and oral arguments by *E. J. Goppert* and *Paul R. Greever,* of Cody, Wyoming, and by *C. H. Harkins*, of Worland, Wyoming.

KIMBALL, Chief Justice.

This is a proceeding under the statute (Sections 9-116 to 9-120, R. S. 1931) by the state board of law examiners, complainant, for the purpose of disciplining the respondent, an attorney at law. The complaint contains charges set forth in 36 counts. Respondent denied all the charges. The hearing in the District Court was before three district judges who found the respondent guilty on counts 1 to 34 and not guilty on counts 35 and 36. The recommendation of the trial judges is that respondent be suspended from the practice of law for the period of two years. The respondent contends that the finding on counts 1 to 34 is not supported by the evidence.

The clerk of the District Court of Big Horn county keeps an official record book called "Judgment Docket No. 2." It is evidently the index of judgments required

by Section 89-2616, R. S. 1931. When an execution is issued on an indexed judgment the fact is shown by writing the word "Execution" in a column headed "Kind of Writ," and the date in the next column headed "Date of Writ." If five years pass without the suing out of an execution, the judgment becomes dormant and ceases to operate as a lien. § 89-2922. Each of the counts 1 to 34 of the complaint describes an indexed judgment in an action in which respondent appeared as attorney, and charges that respondent, fraudulently and for the purpose of making it appear that the judgment had been kept alive, wrote in the record words and figures that indicated the issuance of an execution that kept the judgment from becoming dormant. On the dates shown by the alleged false entries, no executions were in fact issued or requested, and the entries were not made by the clerk nor by any other person with authority to make them.

The complainant contended that the false entries, which in most instances consisted of the word "Execution" followed by figures (e. g. 8/22/27) indicating a date, were in the handwriting of respondent. The trial judges found that to be so, and there can be no doubt that the finding is supported by substantial evidence. A paper in which the word "execution" appears three times in the admitted writing of respondent was available as a standard of comparison. Two witnesses experienced in the examination of questioned writings testified, one for complainant and one for respondent. They agreed in the opinion that all the false entries were in the handwriting of the same person, but disagreed on the question of their being in the writing of respondent. The credibility and weight to be given to the testimony of these witnesses were matters for decision by the trial judges. Besides, the judges themselves had the admitted and disputed writings for examination and comparison, and their finding that the false entries were in the handwriting of respondent may have been based largely on their own examination.

In the preparation of respondent's briefs, it was assumed that the finding of facts by the trial judges were merely advisory. Questions usually left to the trial judge or jury, such as the credibility of witnesses and the weight of the evidence, are fully argued. The briefs were prepared before our opinion in State Board of Law Examiners v. Phelan, 5 Pac. (2d) 263, had appeared in print, and evidently before the case came to the knowledge of the attorneys. It was there held that in case of a jury trial in a proceeding of this kind, the verdict has the same effect in settling issues of fact as a verdict in a civil action at law. For reasons stated in that opinion, we must give no less effect to the findings of the trial judges when the case is heard without a jury.

On oral argument, with the Phelan case in mind, it was properly conceded that the general rule is that in proceedings of this kind this court will not disturb a finding of fact that is supported by substantial evidence. It was thought, however, that the present case might be an exception, because the challenged finding is not based on evidence of witnesses who testified in the presence of the trial judges, but on the opinion of complainant's expert who testified by deposition, and on the comparison of writings that may be examined and compared by the judges of this court as they were by the trial judges. The rule prevailing in many jurisdictions, that the appellate court is not bound by a finding of fact on evidence consisting wholly of depositions and documents, has never been considered by this court in any decision that has come to our attention. We do not think the rule, if approved, would apply in the case at bar. Witnesses for respondent on the question of the disputed handwriting testified orally from the witness stand. The testimony on behalf of complainant, and the opinion of the trial judges formed from their own examination of the writings, furnished substantial grounds for the finding of fact in favor of complainant. To set aside that finding we

would have to hold that the trial judges should have given more weight than they did to oral testimony on behalf of respondent. See, Sims v. Southern Surety Co., 38 Wyo. 165, 171, 265 Pac. 450.

There are cases holding that a finding of fact on a question of disputed handwriting may be set aside on appeal if the appellate court, on a review of the evidence and its own examination of writings in the record, becomes thoroughly convinced that the finding is wrong. Boyd v. Gosser, 78 Fla. 64, 82 So. 758, 6 A. L. R. 500, and some of the cases reviewed in note, 6 A. L. R. 507. We express no opinion on the correctness of this rule. In the case at bar, each member of this court has made a careful comparison of the false entries with the admitted handwriting of the respondent. Such comparison does not cause us to believe the trial judges made an unwarranted finding.

A good deal of respondent's evidence was put in for the purpose of proving lack of motive for making the false entries. As shown above, it was the theory of complainant that respondent made the entries for the purpose of preventing the judgments from appearing to be dormant. Respondent contended that, for various reasons, nothing was to be gained by him or his clients by keeping any of the 34 judgments alive. He introduced evidence to show that many of the judgment debtors were insolvent and had no property to which a judgment lien could attach. Some debtors had moved away leaving no property. Many of the judgments had been paid or compromised or satisfied by sale of property on execution; some had been discharged in bankruptcy; one had been set aside by a later judgment, and several had been assigned to parties not represented by respondent. One judgment had never in fact been rendered, and one was against respondent's client. Some judgment creditors were no longer represented by respondent, and others had instructed him to take no further steps toward enforcement of the judgments. The judgment docket

on which the false entries were made did not contain any notation showing the assignment, release or discharge of any of the judgments. This last statement may be only substantially correct. We do not have the book before us as we prepare this opinion.

The evidence to which we have just referred is given all the weight it is entitled to in determining the order to be entered. The evidence tends strongly to show, and probably did show to the satisfaction of the trial judges, that respondent had no reason to expect that his clients would be benefited by the false entries. There was some evidence introduced by complainant for the purpose of showing that in one case a purchaser of property was deceived by the condition of the record, but that evidence is not at all clear, and the trial judges made no special finding on it. Of course, it does not follow that there was no possible motive for the entries by respondent. He may have been induced to act by the thought that a record showing many dormant judgments in cases in which he was an attorney affected his reputation for diligence. The entries evidently were made without much deliberation or planning. Some of the inserted dates were Sundays or holidays. Several entries, as shown above, were appended to the index of judgments that could not have been revived by any means.

Respondent has at all times protested his innocence, but on that point we must accept the finding. He has made no plea for leniency, yet we have decided to be as lenient as the facts, in their most favorable aspect, seem to permit. The complainant asks that respondent be disbarred. While the charge is of a serious offense, we think the evidence to which we have referred furnishes good ground for supposing that the respondent may have acted thoughtlessly without any purpose of pecuniary gain. His previous good reputation was shown by evidence of several prominent citizens and attorneys, including the respected president of the complainant board. The district judges thought disbarment too severe a penalty. Considering all these matters, we have

decided to follow the recommendation of the trial judges, and order that respondent be suspended for the period of two years.

We are not asked to disturb the finding in favor of respondent on counts 35 and 36. It appears that the finding is supported by substantial evidence which need not be discussed. Judgment of acquittal on these counts will be entered.

It will be ordered that respondent be suspended from the practice of law for the period of two years from this date.

BLUME and RINER, JJ., concur.