## KALEB, ET AL. v. MODERN WOODMEN OF AMERICA

(No. 1872; January 26, 1937; 64 Pac. (2d) 605)

The cause was submitted for plaintiffs and appellants on the brief of *R. W. Ogden* of Casper.

The cause was submitted for defendant and respondent on the brief of *George G. Perrin, George L. McDonald, R. H. Nichols* and *William B. Cobb* of Casper.

KIMBALL, Justice.

Plaintiffs are three daughters of Isaac J. Krainson, whose life was insured by defendant society. From 1921 until June, 1930, the contract of insurance was evidenced by a benefit certificate, dated August 2, 1921, which provided that on the death of the insured $2000 would be paid to the three daughters—$1500 to Mrs. Goodrich and $250 each to Mrs. Kaleb and Mrs. Cohen. The certificate was kept in force until June 1, 1930, by payment of assessments of $3.55 a month. It provided that defendant's by-laws with subsequent changes were part of the contract.

In June, 1929, when the insured was about 75 years of age, defendant's by-laws were changed for the purpose of requiring that benefit certificates held by members seventy years of age or older be put on an adequate basis by July 1, 1930. The plaintiff raised no question as to the validity or effect of this change. The new by-laws, as applied to the insured, gave him the right either to continue to carry his $2000 benefit certificate

on an increased premium basis, or to apply for and receive a paid-up certificate for $460 without obligation to make any further premium payments. If he elected to continue to carry the $2000 certificate, the monthly payments (theretofore, $3.55) to keep it in force were to be increased to about $22.00.

On June 4, 1930, the insured made written application to exchange his $2000 benefit certificate of August 2; 1921, for a paid-up certificate for $460. The application stated that in consideration of the issuance of the new certificate therein applied for, the old certificate was surrendered and should be void. The application was accepted, the new certificate dated June 1, 1930, in which Mrs. Goodrich was named as the sole beneficiary, was issued and delivered, and thereafter no assessments or premiums were paid to defendant.

The insured died on July 24, 1930. Thereafter plaintiffs brought this action to recover on the surrendered certificate, dated August 2, 1921, contending that the insured was mentally incompetent to make the application which resulted in the exchange of certificates. There was no charge of fraud or undue influence. The case was tried to the judge who found that the insured was competent to make the application, and gave judgment that limited defendant's liability to the amount of the paid-up certificate of June 1, 1930. The plaintiffs appeal. Their sole contention is that the evidence required a finding in plaintiffs' favor on the question of the mental incompetency of the insured at the time he applied for the paid-up certificate.

Counsel for plaintiffs recognizes the general rule that on appeal the criterion in determining the sufficiency of the evidence is whether there is substantial evidence to support the trial court's decision, not whether the decision is supported by a preponderance of evidence. See Peterson v. Johnson, 46 Wyo. 473, 478, 28 P. (2d) 487. It is contended, however, that

because in this case most of the evidence was by depositions, the rule does not apply. There were six witnesses, including two of the plaintiffs (Mrs. Goodrich and Mrs. Kaleb), whose testimony bore on the question of the insured's physical and mental condition. All except Mrs. Goodrich gave their testimony by depositions. We have held that the general rule by which we are controlled in considering the sufficiency of the evidence applies though much of the evidence consists of depositions and written documents. See Board of Examiners v. Strahan, 44 Wyo. 156, 161, 8 P. (2d) 1091; Sims v. Southern Surety Co., 38 Wyo. 165, 171, 265 Pac. 450. In the case at bar substantially all of the evidence introduced for the purpose of showing eccentric or irrational conduct of the insured was given by Mrs. Goodrich who testified before the trial judge. She also went further than any other witness in expressing the opinion that the insured was mentally incompetent. The weight of the evidence as a whole on the point in dispute depended largely on the weight given to her testimony. In these circumstances, we think the general rule applies, and the trial judge's finding on the facts, if supported by substantial evidence, must stand. We do not intend to intimate that a consideration by us of questions going to the credibility of witnesses and the preponderance of evidence would lead to a decision contrary to that of the trial judge.

The insured had never been declared insane or mentally incompetent and the plaintiffs had the burden of proof on that issue. It was incumbent on them to overcome the presumption of sanity by showing that the insured did not have sufficient reason to enable him to understand the nature and effect of the act in question. Williston on Contracts, (2d ed.) § 256.

We may concede that the evidence showed, and the trial judge must have believed, that at the time of the transaction in question, the insured's physical and

mental powers were weakened by old age and disease. He was afflicted with cardio-nephritis which caused his death seven weeks later. His sight and hearing were very poor. There was testimony of his physician, Dr. Jackson, that he was suffering from senile dementia, which was described as a condition of "childishness," like that apparent in a "number of men of his age." He had been a tailor, but for several years, probably because of defective sight and other physical disabilities, had not engaged in any business. He drew a pension from the government, and lived at Lead, South Dakota, with Mrs. Kaleb and her family. Several witnesses, including Dr. Jackson, testified that they were of opinion the insured was incapable of attending to business affairs.

The questioned transaction came to the attention of the insured on three occasions. On May 29, 1930, while Mrs. Goodrich, who lived at Casper, Wyoming, was visiting at the home of the insured and Mrs. Kaleb, a Mr. Everett, representing the defendant, called for the purpose of having the insured make an election as required by the new by-laws. Mrs. Goodrich for several years had paid all assessments on the $2000 benefit certificate. The question was whether she could assume the burden of future payments increased to $22 a month. The question was discussed by Mrs. Goodrich and Mr. Everett in the presence of the insured and Mrs. Kaleb. Mrs. Goodrich testified that she told Mr. Everett that she did not know whether she could pay the increased assessments, but Mrs. Kaleb thought Mrs. Goodrich said she could not pay them. Mrs. Goodrich apparently intended by her testimony to leave the impression that her father did not hear or understand what was being talked about at this conference, but Mrs. Kaleb testified that her father then said that he wasn't going to pay another cent on the old certificate.

On May 30 or 31, Mrs. Goodrich returned to her home at Casper.

The transaction was again called to the attention of the insured on June 4, when he signed the application for exchange of certificates, and again on a date not shown, when he subscribed his name to this statement on the face of the paid-up certificate: "I have read and hereby accept this benefit certificate and agree to all conditions therein contained and referred to."

The evidence indicates that both Mrs. Goodrich and Mrs. Kaleb consented to, and perhaps advised, the making of the application for exchange of certificates. A neighbor testified that Mrs. Kaleb told her of the transaction, saying it was "thought it cost too much to carry the insurance if he lived any length of time. Didn't know how long he would live. Dr. Jackson didn't know. Said he might live for a long time." The paid-up certificate was delivered some time in June to Mrs. Goodrich who thereafter kept it making no claim that it was invalid. The sanity of the insured was not questioned until after his death. Counsel says the consent of Mrs. Goodrich and Mrs. Kaleb was immaterial, and certainly could not bind their sister, the other plaintiff, who had nothing to do with the transaction. It may be conceded that the consent of the beneficiaries did not create an estoppel. But Mrs. Goodrich and Mrs. Kaleb were not only beneficiaries but also witnesses, and gave opinion evidence for the purpose of establishing the mental unsoundness of their father. The fact that they consented to a transaction resulting from negotiations in which they participated was of some importance as tending to show that at the time of the act in dispute they believed their father was competent. See Irish v. Smith, 8 Serg. & R., 573, 11 Am. Dec. 648; Bonnemort v. Gill, 165 Mass. 493, 495-496, 43 N. E. 299; Roe v. Taylor, 45 Ill. 485, 489; Wigmore on Ev., § 1040.

Mere weakness of body or mind or both do not con-

stitute what the law regards as mental incompetency sufficient to render a contract voidable. Williston on Contracts (2d ed.) § 256; Black on Rescission (2d ed.) § 263; 13 C. J., 262; Sutherland State Bank v. Furgason, 192 Ia. 1295, 1309, 186 N. W. 200. A condition which may be described by a physician as senile dementia may not be insanity in a legal sense. See Wisner v. Chandler, 95 Kan. 36, 147 Pac. 849; Leonard v. Shane, 182 Ia. 1134, 166 N. W. 373; Smith v. Smith, 205 Ill. App. 116.

We cannot hold that there was no substantial evidence to support the finding of the trial judge. There were grounds for the belief that the insured, though physically and mentally weakened, had sufficient reason to enable him to understand the nature and effect of the questioned act. Opinions that the insured was unable to attend to business affairs were probably based largely on his physical disabilities that made it difficult for him to see and hear and get about. Mrs. Kaleb, one of the plaintiffs, had the insured under her constant observation for several years, and was probably better qualified than any other witness to give an opinion on the subject. She stated that her father was "to a large extent mentally incompetent," but this was supplemented by the opinion that her father at the time of the transaction "probably knew what he was doing * * *, but he couldn't hear well and it was hard to make him understand." Another witness testified that the insured, whom he visited very often—the last time within a month of his death—"was sick and weak, but otherwise all right mentally."

The judgment will be affirmed.

BLUME, Ch. J., and RINER, J., concur.