# WICKS v. HUTSCHENREITER

(No. 2051; June 24, 1938; 80 Pac. (2d) 429)

For the plaintiff and appellant, the cause was submitted on the briefs of *R. Dwight Wallace* of Evanston.

The cause was submitted for the defendant and re-
spondent on the brief of *Louis Kabell, Jr.* of Evanston.

Kɪᴍʙᴀʟʟ, Justice.

This is an appeal by plaintiff from a judgment for defendant sued as maker of a promissory note. The case was tried without a jury. The only question necessary to be decided on the appeal is whether there is substantial evidence to support a finding that defendant did not sign the note.

The note is for $700, dated October 16, 1933, due January 17, 1934, payable to Economy Oil Co., Inc., or order. Defendant's name is signed twice, thus:

"Fred W. Hutschenreiter
"Evanston, Wyo.
"F. W. Hutschenreiter"

Plaintiff obtained the note on October 18, 1933, from F. A. Fisher, an itinerant stock salesman who claimed to be president of the Economy Oil Company, payee in the note, whose shares of stock he was selling. Plaintiff is a physician and surgeon. He is also president of

the Stockgrowers Bank of Evanston, but was not acting for the bank in his dealings with Fisher and defendant. He testified that he first met Fisher on October 18, 1933, when Fisher called twice at plaintiff's office and tried unsuccessfully to interest him in the purchase of stock. Later, after office hours on the same day, Fisher called at plaintiff's home and requested a loan of $650, which he said he needed immediately, offering as security the note in suit and a diamond ring belonging to defendant, which Fisher then exhibited stating that the note was for stock sold to defendant and the ring was a pledge to secure the note. Plaintiff made the loan (evidenced by a promissory note for $650, dated October 18, 1933, due November 10, 1933, payable to plaintiff, signed by Economy Oil Company, by Fisher as president) and accepted the offered security. It may be inferred that Fisher left Wyoming the following day, and has never returned.

About November 1, 1933, defendant was informed that plaintiff held the pledged note and ring. Defendant promptly called at plaintiff's office, asked to see the note, examined it, denied that he had signed it, and for the purpose of comparison wrote his name on a prescription blank three times, once as F. W. Hutschenreiter and twice as Fred W. Hutschenreiter. Plaintiff and defendant then went to the First National Bank, where defendant did his banking business, and submitted the note and the three signatures on the prescription blank to the cashier. The cashier told defendant he "thought that was his signature" on the note. Defendant said he didn't think so, and, according to the testimony of plaintiff and the cashier, added that "he must have been drunk when he signed it."

Defendant continued to assert that he had not signed the note, and he and plaintiff, who had been friends for many years, joined efforts in trying to have Fisher

brought back to Wyoming to face criminal charges. Fisher was not brought back, but it seems that the criminal charges were instrumental in causing him to make a payment of $200 on the note of October 18. Plaintiff brought this action in April, 1936, seeking to recover as pledgee of the note of October 16, and the ring. The trial court found generally for defendant, and ordered the ring returned to him. It is stipulated that the specifications of error challenging the part of the judgment that gives the ring back to defendant are abandoned.

Defendant is an engineer and has been employed for many years by the Union Pacific Railroad Company. He testified that on October 16, 1933, Fisher, in company with A. C. Christensen, called at his house, and that Fisher, by various false representations and promises, induced defendant to agree to buy 1000 shares of the stock of the Economy Oil Company, for $1 a share. During the negotiations, when defendant said he did not feel he could afford to buy, Fisher proposed that if defendant would let him have the diamond ring, which he had seen on defendant's finger, as security for 300 shares, the balance could be paid in instalments of $25 per month without interest, and defendant would be made a member of the board of directors of the company and receive $12 a month for attending meetings of the board. The stock certificates were to be delivered on October 18, two days later. Defendant testified that he accepted this offer, and Fisher then prepared a memorandum of the agreement to which defendant signed his name twice, first as Fred W. Hutschenreiter and then as F. W. Hutschenreiter. Fisher than left with the ring and the memorandum.

Christensen, living in Utah, was a friend of defendant, was interested in the Economy Oil Company, and had been traveling about with Fisher, to whom he had

mentioned defendant as a possible buyer of stock. He testified that he was with Fisher at defendant's house on October 16, and that he heard and saw all that took place there. Both he and defendant testified positively that the only paper signed by defendant was the memorandum of the contract.

The cashier, already mentioned, and the assistant cashier, of the First National Bank, had seen defendant sign his name, were familiar with his signature, and as witnesses for plaintiff, gave the only opinion evidence that need be noticed.

The cashier was of opinion that the first signature on the note was defendant's, and thought the second signature "is the same handwriting though there is a variance." Further, as to the second signature, he testified that it "might or might not be" the signature of defendant; that it would not "pass" at the bank, but a better signature would be required, except possibly on a check for a trivial sum.

There were available for comparison five admitted signatures of defendant; the three written on the prescription blank and two on checks. These five signatures show only those variations that can reasonably be accounted for in a group of signatures of a rather unskillful writer. The cashier did not undertake to make a detailed comparison of the admitted and disputed signatures. The reason he gave for his opinion as to the genuineness of the first signature on the note was that it resembled the admitted signatures "in the general swing and slant."

The assistant cashier handled the checks, and had had more opportunity than the cashier to become familiar with defendant's signature. He testified that the first signature on the note "bears quite a similarity to defendant's signature." Asked if it was defendant's signature, he said: "The only way I can answer . . .

is that if it was written on a small check I would cash it." As to the second signature on the note he testified that if it was defendant's it was a very poor one; "it is quite balled up"; it "might be" defendant's, but it "was written entirely different" from defendant's usual signature, and that he, the witness, would not "pass" it on a check for any amount. His opinion as to a resemblance between the first signature on the note and the admitted signatures was based on similarity in the "swing," which he thought "means more than anything else." He admitted that it was not his custom in comparing signatures to compare the separate letters. He was asked, however, to compare some of the letters in the admitted signatures with those in the first signature on the note, and found differences in the letters "F, H, c, u," and in the final six letters "reiter." He also noticed in the questioned signature these divergences from the standards of comparison: the stem of the "F" and the "re" in "Fred" are crowded closely together, the capital "H" and "u" are not connected and the first part of the small "h" is crossed like a "t" although there is also a cross for each of the "t's."

Counsel for plaintiff recognizes the general rule that a finding of fact by the trial judge will not be disturbed on appeal unless we can hold that there is no substantial evidence to support it. It is contended, however, that the rule does not apply to all cases of disputed writings. See notes, 6 A. L. R. 507, 12 A. L. R. 212, 27 A. L. R. 319. In State Board of Law Examiners v. Strahan, 44 Wyo. 156, 162, 8 P. (2d) 1091, we said "there are cases holding that a finding of fact on a question of disputed handwriting may be set aside on appeal if the appellate court, on a review of the evidence and its own examination of writings in the record, becomes thoroughly convinced that the finding is wrong .... We express no opinion on the correctness

of this rule." We did, however, in that case compare the writings, and stated that we were not convinced that the finding of the trial judges was wrong. In the present case, also, we have examined and compared the writings, with the same result as in the Strahan case. It must be conceded that there are marked differences between the questioned and the admitted signatures. The latter are fairly clear and uniform, and appear to have been written rather slowly and carefully. Most of the questioned writing, including "Evanston, Wyo." is hurried, with letters crowded, omitted or imperfectly formed. The second signature is hardly decipherable. The capital letters are so crowded that they appear as "FVC" instead of "FWH." Immediately in front of the first disputed signature there is a flourish that is no part of the signature, but seems to be the remaining part of a character that was partially erased before the word "Fred" was written over the erasure. In the first questioned signature there is an unnaturally wide space between the "W" and "H", and one of the small "r's" appears as an almost perfect "o." The "v" is omitted from "Evanston."

There was no expert testimony to furnish a satisfactory explanation of how these many divergencies could occur in the natural writing of the same person. Possible explanations were no doubt considered by the trial judge and rejected as insufficient. Undue haste and carelessness might account for some of the divergencies, but there is no reason to suppose that defendant would sign a paper of such importance with less than his usual care. It is said that the testimony that defendant, while disputing the signatures on the note, remarked that he "must have been drunk when he signed it," suggests the possibility that he signed when he was so drunk that he could not write a clear signature. Defendant denied that he made the quoted

remark, and there was no evidence that he had ever been drunk. If he made the remark, it may have been his way of emphasizing his denial of the signature, just as one might say, "if that is my signature, I must have been crazy when I wrote it," without intending to admit either that he had signed or that he had been crazy.

Other questions going to the credibility of witnesses and weight of the evidence need not be discussed. The judgment finds substantial support in the testimony of defendant and Christensen that defendant did not sign the note. The trial judge was not bound to disbelieve these witnesses because of anything shown by the writings themselves or by the rather doubtful opinion evidence.

The judgment will be affirmed.

*Affirmed.*

BLUME, Ch. J., and RINER, J., concur.