William E. BARBER and Edna Barber,

Appellants (Defendants below),

v.

STATE HIGHWAY COMMISSION of
Wyoming, Appellee (Plaintiff below).

No. 2846.

Supreme Court of Wyoming.

July 28, 1959.

342 Pac.2d. 723

342

Brown, Healy, Drew, Apostolos & Barton and William H. Brown, Jr., Casper, for appellants.

Thomas O. Miller, Atty. Gen., and Robert L. Duncan, Sp. Asst. Atty. Gen., for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

344

346

348

OPINION.

Mr. Justice PARKER delivered the opinion of the court.

The State Highway Commission of Wyoming, plaintiff, in accordance with its resolution directing action to be taken under § 48-105, W.C.S.1945, as amended, filed a petition in the District Court of Converse County seeking to acquire by condemnation 158.5 acres of ranch land belonging to William E. Barber and Edna Barber. The purpose for which the property was sought was the establishing of an access facility highway to be a portion of U. S. Highway 87. Defendants Barber answered, denying most of the allegations of the petition for want of knowledge; alleged damage in excess of $92,000 which would accrue to them if the property were taken; and prayed judgment. They also asserted that plaintiff had not exhibited a good-faith effort toward agreement on damages but had offered only $5,800 for the land. The court issued an order appointing commissioners to assess and determine the

compensation to be paid to defendants and shortly thereafter entered an order granting the plaintiff immediate possession of the land sought to be condemned. The commissioners appraised the value of land being condemned at $38,982.50, which amount covered numerous items: $14,162.50 for the land; $4,500 for relocation and construction of certain ranch facilities; $3,000 for loss of trees; $3,000 for exposure of the ranch to the public; $2,020 for aggregate taken from the condemned land; $1,000 for loss of adequate means of ingress and egress during the period of the highway construction; and $11,300 for damage to the ranch operating unit due to the highway's cutting directly through the ranch. Both plaintiff and defendants expressed dissatisfaction with the award and demand was made for a jury trial to determine the compensation which defendants were to receive for the taking of their property.

Upon the trial of the cause, the jury rendered a verdict awarding the defendants the sum of $15,000, itemized as $3,992.50 for the property actually taken and $11,007.50 for the damage to the property not actually taken but injuriously affected. The trial court thereafter overruled a motion for new trial and entered an order confirming the verdict of the jury in the amount of $15,693.[1]

In their appeal the defendants have urged various errors which they believe warrant a reversal.

---

[1] The difference between the order and the verdict apparently resulted from an inadvertent transposition of the jury's figures, and the order should stand corrected to conform to the verdict.

I

Defendants say that the order is contrary to the law and to the evidence, for one reason because plaintiff had no authority or right to condemn the land and consequently the court had no justification to hear the controversy. They point out that the right of eminent domain is wholly within the power of the legislature and cannot be exercised by any other agency except by a proper delegation through statute. Plaintiff purported to act under the provisions of § 48-105, W.C.S. 1945, amended by c. 163, S. L. of Wyoming, 1953, which directed that the State Highway Commission acquire rights of way "by condemnation proceedings in the same manner as is provided by law for the condemnation of rights of way for railroad purposes as set forth in Article 65, Chapter 2, Wyoming Complied Statutes, 1945." Plaintiff's counsel admit that the statutory reference in this portion of the session law was erroneous, there being no such article and chapter, but argue that the reference intended was c. 3 art. 61, W.C.S.1945, the portion of the Wyoming statutes which deals with eminent domain by railroads; and they say the court should give effect to the intention of the legislature. On the other hand, defendants insist that plaintiff had no authority to proceed under § 48-105, as amended by c. 163, S. L. of Wyoming, 1953, because this session law referred to a part of the statutes which was nonexistent. Many authorities are cited by them purporting to say that courts are not the arbiters of statutes and may not make corrections to declare what the courts think that the legislature intended. This is another way of saying that the erroneous designation of the chapter governing condemnation proceedings for railroads leaves the session law ineffective to provide a method of condemnation for

the land here in issue. We think this contention is without merit. It is true that courts will not usurp the power of the legislature by deciding what should have been said,[2] but no such decision is necessary in a situation so plain as this. The session law clearly referred to the chapter and article in the statutes which dealt with "condemnation of rights of way for railroad purposes." Nothing could be clearer, and the mere fact that there was an incorrect designation by numbers should mislead no one. State ex rel. Board of Com'rs of Laramie County v. Wright, 62 Wyo. 112, 163 P.2d 190; Hollibaugh v. Hehn, 13 Wyo. 269, 79 P. 1044.

## II

Defendants insist that the court erred in refusing to give their instructions A, B, C, and D, which related respectively to the formula for determining damages, the obligation of plaintiff to perform work not listed in the plans and specifications, the meaning of just compensation, and the steps in determining the damage. Without setting the instructions forth at length, suffice to say that the subjects mentioned in A, C, and D were adequately treated by the court in instructions 3, 4, and 5 which were given. As to B, we are doubtful that the trial court would have been within its province to instruct the jury on plaintiff's obligations to perform acts other than the ones mentioned in the plans and specifications; and the authorities cited by the defendants on this point are unconvincing.

---

[2] State v. Hungary, 75 Wyo. 423, 296 P. 2d 506; State ex rel. Board of Com'rs of Laramie County v. Wright, 62 Wyo. 112, 163 P.2d 190.

## III

Defendants argue that they should have been allowed to adduce testimony tending to show that the Federal Government rather than the State of Wyoming was paying the bill. This we think was, or at least should have been, wholly immaterial to the issues. Apparently the idea underlying the request was that juries regard Federal projects as pork barrels which may be tapped without pain to the conscience or injury to the residents of the State. Our experience is that the citizens who serve on juries are fully cognizant of the harm to State taxpayers which results from unwarranted Federal spending. In any event, the argument is without merit, and no authorities are cited to warrant consideration of the point.

## IV

Defendants contend that the court erred in granting plaintiff's motion to have the jury view a part only of the appellants' property and cite some cases which tend to hold that the basis of a jury's verdict must be the testimony and evidence adduced at the trial rather than the jury's view of the premises. Apparently plaintiff's counsel concede the propriety of these authorities for they do not argue the point, and the trial court must have agreed for it gave an instruction saying that the purpose of the jury's visit was to better enable them to understand the testimony and apply it, not to make the jurors silent witnesses. Perhaps it is not possible that a group of persons see a portion of the premises under litigation to the exclusion of other portions thereof without giving some weight to what they have seen—even if the court has instructed them not to do so. If the jury were to be shown any of the ranch perhaps it would have been fairer to allow them

to see all of it. However, there is no showing that the limited view in this case prejudiced the defendants. Moreover, even under the common law a trial court has wide discretion in permitting a jury to view premises,[3] and the rule is applicable in eminent domain cases.[4]

## V

Defendants urge that the court improperly overruled objections to plaintiff's cross-examining one of the three former commissioners concerning the amounts previously placed on the property, saying that the damages set by the commissioners who had an obligation to evaluate the property were not proper evidence to be placed before the jury in this case. We are in agreement with the authorities cited by counsel to that effect. However, in this instance the inconsistent statements of the witness are in issue rather than the former action of the commissioners, and such inconsistent statements if material may be the subject of cross-examination or impeachment, not as of substantive or independent testimonial value but merely in order that the two mouthings of the person who purports to inform the court and jury may be placed side by side so that the relative value of one or the other could be determined by the fact-finding body. 3 Wigmore on Evidence, 3 ed., § 1017 et seq.; 4 Jones on Evidence, 5 ed., § 932, et seq.; McCormick on Evidence, 1954, § 37 et seq.; 58 Am.Jur. Witnesses, § 688; 98 C.J.S. Witnesses

---

[3] 53 Am.Jur. Trial § 441; Annotation, 42 L.R.A. 368; § 3-2409, W.C.S.1945.

[4] 5 Nichols on Eminent Domain, 3 ed., § 18.3; Jahr, Eminent Domain, 1953, pp. 371, 372; 1 Orgel on Valuation under Eminent Domain, 2 ed., pp. 547, 548.

§ 573 et seq. See Annotations at 133 A.L.R. 1454 and 66 A.L.R. 289. In eminent domain cases where a commissioner is examined as a witness, he may be cross-examined as to his report. Munkwitz v. Chicago, M & St. P. Ry. Co., 64 Wis. 403, 25 N.W. 438; 2 Lewis, Eminent Domain, 3 ed, pp. 1149, 1150.

## VI

It is maintained that the court erred in refusing to admit certain rebuttal testimony of witness Reno. This testimony related to values, benefits, and detriment, which were said to be properly a part of the case in chief. As counsel urge, if there be no trickery, material evidence should not be rejected merely because it is in improper order. However, under the Wyoming Rules of Civil Procedure, the bar and bench of this State are dedicated to a full and fair disclosure of all the facts in a case at or prior to the time of trial, with no withholding of certain matters to be used as secret weapons. It is our view that rebuttal testimony should ordinarily be limited to that which will relieve a litigant who, having been free from deception in the pleadings and pretrial stages, has at the trial been surprised and placed at an unfair disadvantage. To effectuate this, the trial court must have considerable latitude in demarcating rebuttal testimony. We think there was no abuse of discretion here.

## VII

What we have said regarding the rebuttal testimony of witness Reno is equally applicable to the exception which defendants registered to the trial court's interposing its own objection to certain testimony. Since the primary interest of the bar and bench is the dis-

closure of the true facts in a given litigation, we think a presiding judge is within his rights and is discharging his duty by controlling the testimony offered even if he is obligated to act on his own motion in accomplishing this. See Chapman v. Rose, 135 Wash. 248, 237 P. 708, 710, quoting State v. Frost, 134 Wash. 48 234 P. 1021, wherein it was said that the function of a trial judge is to see that the litigation is conducted according to the rules of law and if he believes improper questions are being asked he is entirely within his right in directing that they be not answered even though no objection is made, for the trial judge is more than a mere referee.

## VIII

Defendants also argue that the order is erroneous because the verdict is contrary to the weight of the evidence. An attack of this nature often poses a difficult and delicate question. A reviewing court, lacking the advantages of observation at the trial, is reluctant either to set up its judgment as superior to the finder of fact or to indulge in an exercise of semantics. Nevertheless, findings and judgment which are unsupported by the evidence, contrary to the evidence, or obviously against the great weight of the evidence, may not stand. 4 C.J. 880; 5A C.J.S. Appeal & Error § 1658; 3 Am.Jur. Appeal and Error §§ 887, 890. The criterion is the substantiality of the evidence to support the court's decision. Kaleb v. Modern Woodmen of America, 51 Wyo. 116, 64 P.2d 605; Peterson v. Johnson, 46 Wyo. 473, 28 P.2d 487, 91 A.L.R. 723.

In the present case, the matter in issue is the value of the land actually taken and the damages to other portions of defendants' property not actually taken but

injuriously affected. Defendants point out the constitutional provision against the taking of property without just compensation,[5] and quote Chief Justice Blume in Hirt v. City of Casper, 56 Wyo. 57, 103 P.2d 394, 398, where in discussing the meaning of what is now c. 3, art. 61 W.C.S.1945, he said:

"* * * The term 'damaged' used in the constitution, and the term 'injuriously affected' used in the various sections of the statute, are synonymous. * * * In other words, the statutes of this state recognized the fact, prior to the adoption of the constitution, that in a proceeding of eminent domain compensation should be made not only for property actually and physically taken, but also for damages which would be sustained by reason of the exercise of the power. The constitution merely confirmed a rule which had already previously been adopted by the legislature. * * *"

Apparently the trial court recognized this rule since various instructions discussed the damages to defendants' property not actually taken and the market value of the property before and after the taking. We therefore look to the record in order that we may ascertain what is the evidence upon which the verdict could be based. Without delineating the evidence which defendants adduced on this subject, we find that the testimony of defendant Barber and some seven other witnesses, who purported to be familiar with defendants' property as a ranching unit, listed the damages caused by the highway, by taking the value of the ranch before and afterward, as ranging from $65,000 to $102,000, the majority placing them in the neighborhood of $80,000. This method, of course, included the loss of the land as well as other items.

---

[5] Art. 1, § 32, Constitution of Wyoming.

The only evidence of damages presented by the plaintiff was that of Paul Goodman, G. Gordon Sanford, and B. L. Scherck.

Goodman said he was a real estate broker and had been for some sixteen years, had bought, sold, or listed ranches in Wyoming and in Converse County. When asked whether or not he was familiar with the Barber ranch, he answered, "Only as I have been out there twice recently and, of course, have gone through the old highway many, many times." There was nothing to show that he had made a careful examination of the ranch, its operation as a unit, or its value. Nevertheless, he gave an opinion that "it is worth a little more now than before * * * I believe it would sell easier now after the new highway is in than before for the same amount of money." Defendants repeatedly objected to his testimony as having insufficient foundation. His being in the real estate business and having listed for sale certain properties in the State and the area undoubtedly qualified him to some extent to give a figure as to the value of the land actually taken, but it is equally clear from his own statements that he made no examination of the entire ranch or its operation. He was therefore without foundation to testify on the damages to the ranch unit.

Sanford said that he was a resident of Casper, had been born and reared on a ranch in Natrona County, had acted as appraiser of Wyoming land for life insurance companies and other agencies interested in ranches, and knew of land valuations in that vicinity. However, he also when asked if he was familiar with the Barber property said, "I should qualify this, that I am familiar with the Barber property only so much as the new highway right-of-way goes by and that land

north of the present highway right-of-way. I have not had occasion to visit with Mr. Barber or go over the other lands south of the highway right-of-way." In fact his statements are unmistakable that he had not even seen portions of the ranch. Thus, the witness's testimony as to valuation could not reasonably have been taken to deal with any damages which were incurred by the defendants other than the actual taking of the acreage.

Scherck, in the real estate business in Casper for some forty-five years, said that he was familiar with ranch property in Converse County, but he likewise when asked if he had examined the Barber ranch said, "No sir. Let me put you straight. I was sent down here to get the value of the land inside of this new right-of-way. I was not sent down to appraise the Barber ranch or anybody else's ranch, just the right-of-way. That is all I am going to tell you about." He thereby clearly disqualified himself from giving an acceptable opinion on the value of the ranch before and afterward or the damage which had been incurred to the defendants for injury to the business unit. Defendants objected to his testimony because of insufficient foundation. We think the court correctly ruled that the testimony could stand since the witness was qualified to give some limited opinions on the values of Wyoming ranch properties, but he like the others having disclaimed specific knowledge of the value of the Barber ranch left his evidence unsubstantial to establish the total damages sustained.

The verdict recited two elements of damages: (1) the value of the land actually taken, and (2) the damages to the portions of defendants' property not actually taken but injuriously affected after deducting

therefrom the value of the real benefits or advantages, if any, which might accrue from the construction of the highway. This was in accordance with instructions which the trial court properly gave. We look then to each of the stated elements to see what evidence there was to support the jury's verdict.

As to the first, the testimony was conflicting, but we think that without question there was substantial evidence to support the verdict. As to the second there was strictly speaking, no evidence at all. No testimony was presented by plaintiff. The statements of Goodman, Sanford, and Scherck, not purporting to have been based upon an evaluation of the ranch as an entity, could not validly refer to damages or benefits thereto. No evidence was presented by defendants relating to either benefits or damages to the unit as distinguished from the land taken, their unchallenged testimony addressing itself only to the lump-sum difference in the value of the property before and after the taking of the highway area.[6] It follows that there is no source in the evidence from which the figure in the second part of the verdict could have been taken. Accordingly, the judgment must be reversed and the cause remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded for new trial.

---

[6] It is unnecessary to determine whether or not the jury would have been acting properly had it allocated a portion of the difference in value as testified by defendants' witnesses to the second element of the verdict.