**STATE HIGHWAY COMMISSION of Wyoming, Appellant (Plaintiff below),**

v.

**Lee NEWTON and Esther N. Newton, Appellees (Defendants below).**

No. 3200.

Supreme Court of Wyoming.

Oct. 9, 1964.

Glenn A. Williams, Asst. Deputy Atty. Gen., Dean W. Clark, Sp. Asst. Atty. Gen., Cheyenne, for appellant.

William G. Watt, Gillette, for appellee.

Before PARKER, C. J., and HARNS-BERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

The State Highway Commission of Wyoming, pursuant to § 1–754 et seq., W.S.

1957, commenced two eminent domain proceedings for the purpose of appropriating 6.9 acres of unimproved land within close proximity to Gillette, Wyoming, and owned by the defendants Mr. and Mrs. Lee Newton. The acquisition was made for the purpose of constructing a new controlled-access interstate highway and related facilities. The proceedings were consolidated for purposes of trial, and the question of compensation was tried to a jury. By its verdict the jury fixed the value of the land taken in the sum of $7,255.00 and damages to remaining portions of defendants' property in the sum of $250.00. Subsequently the trial court entered an order confirming the verdict, and this appeal by the Commission followed.

The principal claim of error relates to the testimony of two witnesses called by the defendants as experts on the question of damages. Over the objection of the Commission that no proper foundation had been laid, the trial court received in evidence the opinion of the witness Arneson that defendants, as a result of the taking, were damaged in the sum of $8,280.00 representing the value of the land taken, the sum of $3,470.00 representing the value of affected improvements, and the sum of $6,212.00 representing damage to the remaining portion of the property not taken, or total damages in the sum of $17,962.00. Over the same objection and for the same class of damages the witness Mader was permitted to state his opinion that the total damages to defendants were in the sum of $21,065.00.

Upon reviewing the record we are convinced that the objection made was insufficient to challenge the education, training, and experience of the witnesses to function as professional appraisers. Rather, the objection was on the narrow ground that the witnesses on direct examination failed to testify to sufficient supporting facts and data which, as a matter of law, qualified them to express an opinion on the market value of the subject property.

In this regard the witness Arneson, a resident of Fargo, North Dakota, first testi-

fied to his general qualifications in appraisal work. He then said that in his inspection and analysis of matters having a bearing upon the valuation of the subject property he went upon all of the land of the defendants consisting of some 840 acres; inspected it; platted it upon a map; and divided it into seven classes, one of which was a 40-acre plot classed as "urban development" which contained the substantial portion of the acreage being appropriated. He made some investigation of the economic conditions of the town; talked with several people concerning the matter; and particularly observed property being developed all around the town and on "the edges." From courthouse records the witness obtained information on some thirty sales of property "around the city in the developing areas" and from those he selected five or six that he said "could be used in comparing the value of the land." He then talked with either the sellers or buyers to ascertain the terms and conditions of the sales. He also testified that his general approach to the problem at hand "was the comparable sales approach."

■ Just recently, in State Highway Commission of Wyoming v. McNiff, Wyo., 395 P.2d 29, 30, we had occasion to inquire into the use of "comparables" in this type of proceeding. In that case the owner's expert witnesses testified to the detail, including price, of "comparable sales" said to have been utilized in reaching their opinions. We there recognized the generally accepted rule that if the trial court, upon preliminary inquiry and within the proper exercise of his discretion, is satisfied that sufficient comparability is shown such evidence may be received "(a) as independent substantive evidence of the value of the property" or "(b) as giving an account of the factual basis" upon which the witness relied. In this connection we might say that where "comparable sales" are available their use in the manner indicated has become the prevailing practice, and although it is this factor that has been a great source of difficulty in the courts, "The disadvantages arising

from the use of such evidence are more than compensated for by the benefits which are likely to come to the jury from its reception." 5 Nichols, Eminent Domain, p. 431 (Rev. 3 Ed.). See also Epstein v. Boston Housing Authority, 317 Mass. 297, 58 N.E. 2d 135, 138.

However, our problem here is not quite the same as in the McNiff case. Defendants' counsel, in attempting to qualify the witness Arneson, brought out that the witness had reviewed some thirty sales of property in the "developing areas" around Gillette and of those selected five or six that "could be used" as comparables. Hoping, no doubt, as a trial tactic, that detail of the sales would more effectively be presented to the jury under further voir dire or cross-examination by the Commission, defendants' counsel took the witness no further. It is of this that the Commission complains. Its position is that because the witness stated that his "general approach" was by the use of "comparables" no proper foundation was laid for his opinion until the facts and details establishing comparability of each sale to the subject property were shown.

■ Whether or not the qualifications of a witness to testify as an expert on valuation are sufficiently established is a question for preliminary determination by the trial judge within the proper limits of his discretion. Johnson v. Hanover Fire Ins. Co., 59 Wyo. 120, 137 P.2d 615, 618; Macy v. Billings, 74 Wyo. 404, 289 P.2d 422, 423. There is no fixed standard by which this may be determined. State v. Vaughan, 243 Ind. 221, 184 N.E.2d 143, 147; State By and Through State Highway Commission v. Parker, 225 Or. 143, 357 P.2d 548. Much depends upon the special knowledge, training, and experience of the witness in the art and the preliminary investigation made in preparing to render an opinion on damages to the property in question. So far as this court is concerned, we have long been committed to a liberal view in the matter of foundation for opinion evidence of values. In Davis v. Graham, 31 Wyo.

239, 225 P. 789, 795, we mentioned what has become a rather generally accepted rule that even a non-expert may testify to the value of property if his knowledge has been derived through the general avenues of information to which the ordinary businessman resorts to inform himself as to values for the conduct of his affairs. See also 5 Nichols, Eminent Domain, pp. 210, 211 (Rev. 3 Ed.). We can scarcely be expected to lay down a stricter rule for qualification of an expert. Delaware, L. & W. R. Co. v. City of Hoboken, 16 N.J.Super. 543, 85 A.2d 200, 206, reversed on other grounds in Delaware, L. & W. R. Co. v. City of Hoboken, 10 N.J. 418, 91 A.2d 739; International Paper Company v. United States, 5 Cir., 227 F.2d 201, 208, 209.

We would agree with the contention of the Commission that knowledge of available comparable sales is an important test. Turner v. State Roads Commission, 213 Md. 428, 132 A.2d 455, 457. We would agree also that where such sales are used in the manner indicated in the McNiff case the burden is upon the offerer to satisfy the court of a reasonable degree of similarity. However, just as there is a degree of tolerance from the somewhat exacting foundation for the admission of the price of comparable sales as independent, substantive evidence and the foundation necessary when such evidence is used in support of expert opinion, United States v. Johnson, 9 Cir., 285 F.2d 35, 40, 41, there is tolerance in the foundation for the opinion itself when the use of such information is limited to the general purpose of showing the investigation made by the expert to gain knowledge of the market value of property in the vicinity of the subject property. If there is lack of completeness in the investigation or reliance upon irrelevant factors as the sole basis for knowledge, such as wholly incomparable sales, that will no doubt be developed by further voir dire of opposing counsel under leave of court and is a matter to be considered by the court in its preliminary determination.

With the foregoing in mind we cannot say that the trial judge abused his discretion in permitting the witness Arneson to express an opinion on the value of the property taken. The record shows an abundance of education, training, and experience on the part of the witness in appraisal work and, as stated, no challenge was made on that score. Neither was the witness seriously challenged on the inspection and classification of defendants' property, particularly as to the 40 acres containing the five-acre tract of the subject property classified as "urban development." Thus, compliance with the requirements laid down in Barber v. State Highway Commission, 80 Wyo. 340, 342 P.2d 723, 728, was satisfactorily shown. We are satisfied also that the trial court was warranted in determining that the witness had sufficient knowledge of the market value of property in the vicinity. His investigation, as set forth above, appears to have been quite complete. True, he did not specifically identify the comparables finally selected for use as an element for his opinion. However, he did locate the comparables in a general way and there is every indication in the record that the witness was prepared to give all of the details of the comparables, if called upon. We would agree that under the circumstances of this case it would have been preferable for the witness to have been more specific, but, as indicated, that was a matter for the trial court. If more specificity was desired by the Commission the witness was open for further voir dire or cross-examination. As we view it, the matter goes to the weight and probative value of the opinion, rather than admissibility, and was a question for the jury.

Most of the authorities cited to us by counsel for the Commission concerning evidence of valuation deal generally with the matters confronting us in the McNiff case. None give support to the specific contention advanced by the Commission. For example, we are cited to a general statement in 5 Nichols, Eminent Domain, p. 241 (Rev. 3 Ed.), to the effect that an opinion

witness should testify as to the facts which substantiate his conclusion. We have no disagreement with the import of such rule. However, an examination of the cases cited in the footnote as supporting the rule fails to disclose a single authority that purports to extend the rule to the lengths we are asked to go. Another authority cited, Commonwealth Department of Highways v. Rankin, Ky., 346 S.W.2d 714, it is true, gives an impression of support. However, this same court in a later case, Commonwealth Department of Highways v. Tyree, Ky., 365 S.W.2d 472, 477, clarified its former statement and specifically stated as follows:

> "Our conclusion, therefore, is that it is not necessary for a witness to give 'supporting facts' in order to make his estimate of values *admissible;* the lack of supporting facts affects only the extent to which the probative value of the estimate will go." [Italics in original.]

We think the chief difficulty with the Commission's argument is its failure to distinguish between requirements necessary to lay a foundation for the valuation opinion of an expert, such as the witness Arneson, and the foundation necessary to recite the sales price of "comparables" for the purpose suggested in the McNiff case. It has been said, "The usual expert is qualified by showing his familiarity with the property and with other property in the neighborhood, his experience in the business, his familiarity with the state of the market and of sales of similar property in the vicinity." People v. La Macchia, 41 Cal.2d 738, 264 P.2d 15, 21, disapproved on other grounds in County of Los Angeles v. Faus, 48 Cal.2d 672, 312 P.2d 680, 688. The view so expressed is consonant with the liberal view heretofore taken by this court. Considering the testimony of the witness Arneson as a whole, we cannot say that it did not reasonably meet the elements of the foregoing rule.

■ What we have said above also applies in certain respects to the witness Mader. Here, however, the witness did identify the comparables without stating the price. Nevertheless, the Commission complains that the sales were not shown to be comparable. In this we observe inconsistency on the part of the Commission. Its witnesses had also considered comparables as a basis for their opinions and in the pretrial conference a map of the area around Gillette, including the subject property, was offered by the Commission. Shown on the map were some nine comparables that the Commission's witnesses proposed to use, identified by number only. Nothing further was developed except, of course, the location of the comparables.[1] At the trial, with no more foundation than was elicited from Mader that in his opinion the sales considered were comparable, the Commission's counsel prevailed upon the trial court, over the objection that no proper foundation had been laid, to admit the testimony of its witness Napier reciting the price of seven of the nine comparables. It should be noted further that of the five comparables identified by the witness Mader, four were used by the Commission's witnesses. It would seem that if the trial court erred in admitting the opinion of the witness Mader for the reason advanced by the Commission it was likewise error for the Commission to offer the opinions of its own witnesses in the same manner. In any event the Commission by its own evidence brought into the case all of the facts pertaining to four of the five comparables utilized by Mader. If there was error in the court's preliminary determination as to the foundation for Mader's opinion, it was rendered harmless by the Commission's evidence and may be disregarded. Cole v. City of Dallas, Tex.Civ.App., 229 S.W.2d 192,

---

1. In passing, we think it appropriate to commend the Commission and the trial court for at least a start in threshing out this matter of comparables at a pretrial conference. More extensive use would obviate much difficulty and avoid potential error.

195; Rule 72(g), Wyoming Rules of Civil Procedure.

The Commission has also assigned as error the confirmation by the court of that part of the verdict awarding the sum of $250.00 as damages to portions of defendants' property not taken. The assignment is of importance because of the principles involved. It will be recalled that the witness Arneson gave it as his opinion that such damage, in other words severance damage, was in the sum of $6,212.00; the witness Mader fixed such damage in the sum of $8,745.00. The testimony of these witnesses is the only evidence advanced by the defendants as support for the award. The Commission contends that the opinions are based on speculation and conjecture and as a consequence the award is not supported by substantial evidence. In connection with this contention it was made clear by cross-examination of the witnesses that the real basis for their opinions was the claimed diminution in value to the 40-acre tract classified as "urban development" caused by "Impairment of access." The basic facts underlying this proposition are uncontroverted.

The east boundary of the tract, which was the outer limits of defendants' property on the east, was situate approximately one-half mile directly west of the corporate limits of Gillette. In passing, we might state that the five-acre area taken from the tract by the Commission was a triangular portion of the northeast corner. There was no direct access east from the tract to Gillette. Rather, access was provided by a private road owned by defendants which also served as access for the entire ranch. Entry to this road was on the north boundary of defendants' property at a point approximately one-eighth of a mile west of the northwest corner of the 40-acre tract. From that point the road ran north and east a distance of 1,500 feet to a point of intersection with U. S. Highway 14–16. Once on the highway the user could travel to Gillette or to other points east and west of Gillette. The right-of-way for the private

road was 75 feet in width. The traveled portion, surfaced with gravel, was approximately 24 feet in width and had been maintained by defendants. The routing of the new interstate highway lay across a portion of defendants' road, and that portion has been taken by the Commission. However, under the plans for construction of the new highway defendants were not to be deprived of their existing rights of access to U. S. Highway 14–16. Commencing at a point approximately 100 feet north of the point of beginning of the private road the plans provided for the construction of a new hard-surfaced service road 24 feet in width, to be maintained by the Commission, connecting with the private road and running northwesterly from that point a distance of some 400 feet to the facilities of an interchange on the interstate highway. At that point a user of the service road was provided with direct access to the eastbound lanes or to the westbound lanes of the new interstate highway through an underpass. In addition, the newly constructed service road would continue on and swing back in a northeasterly direction toward Gillette to a point of intersection with U. S. Highway 14–16 approximately 100 feet northwest of the existing point of intersection of defendants' private road. According to the evidence the substitution of a part of defendants' access by the service road would require additional travel of some 400 feet in order to reach U. S. Highway 14–16.

Ordinarily, the cases relating to the controversial matter of an abutting landowner's right of direct access to an existing street or highway pertain to a factual situation wherein claimed interference results from reconstruction or a change in use of such street or highway. That is not the case here. No change whatsoever was made in U. S. Highway 14–16 to which defendants have access. The only physical changes made in defendants' means of access were in the road utilized by defendants in reaching their existing point of access. As pointed out above, those changes pertinent to the question before us consisted of the replace-

ment of some 1,400 feet of defendants' graveled private road by a hard-surfaced service road and some rerouting of travel in order to reach the facilities of the interchange. Because of this rather unique factual situation we deem it unnecessary to discuss the divergent results reached by other courts with respect to matters of access.

■ As we view it, the general rule stated by us in Sheridan Drive-In Theatre, Inc. v. State, Wyo., 384 P.2d 597, 599, is dispositive of the specific question being discussed. We there made it clear that in order to recover compensable damage for "impairment of a right appurtenant to the land" there must be shown "some diminution in substance" to the land or damage which rendered it "intrinsically less valuable." While this case was an inverse condemnation case, we perceive no valid reason why the rule should not apply to the instant case with respect to the award of severance damage based upon the claimed "Impairment of access." When that is done we are convinced that the award is not supported by substantial evidence and the trial court erred in affirming the award.

■ We so hold for the reason that the uncontroverted evidence in this case shows not only a substantial improvement in defendants' means of access but also actual enhancement thereof by provision for additional access to the new interstate highway. For defendants' experts to assume, nevertheless, that the resulting circuity of travel of some 400 feet—added to the then existing circuity of travel to and from the "urban development" tract on a gravel road—resulted in a substantial diminution of the value of such tract, is to resort to speculation and surmise. There being no other evidence to support the award, it cannot be sustained. Barber v. State Highway Commission, 80 Wyo. 340, 342 P.2d 723, 729; Brasel and Sims Construction Co. v. Neuman Transit Co., Wyo., 378 P.2d 501, 506.

The order of the trial court confirming the verdict of the jury must be modified to eliminate therefrom the sum of $250.00 awarded as severance damage. The trial court is therefore instructed to so modify the order.

Affirmed as modified.