In re TENNESSEE RIVER COAL CO.

(District Court, E. D. Tennessee, S. D.    September 21, 1912.)

No. 1,412.

CORPORATIONS (§ 656*)—FOREIGN CORPORATIONS—VALIDITY OF MORTGAGE—"DOING BUSINESS" IN STATE.

Shannon's Code Tenn. §§ 2546, 2547, which provide that it shall be unlawful for any foreign corporation to do business in the state without first filing a copy of its charter in the office of the Secretary of State, do not render invalid a mortgage on property in Tennessee, made in New York by a corporation of that state which had not complied with such statute to another New York corporation as trustee to secure an issue of bonds, since under the general rule, and also the Tennessee decisions, the execution of the mortgage, although on Tennessee property and there recorded, did not constitute "doing business" in that state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2578–2587; Dec. Dig. § 656.*]

In the matter of the Tennessee River Coal Company, bankrupt. On petition of George M. Candler and others to review order of referee. Reversed.

Brown, Spurlock & Brown, of Chattanooga, Tenn., for trustee.

Chas. C. Moore, of Chattanooga, Tenn., for interveners.

SANFORD, District Judge. This petition is brought by the petitioners to review an order of the Referee dismissing the original and amended petitions filed by them in which they claimed priority as secured creditors under a deed of trust, termed in the record a mortgage, wherein the bankrupt conveyed certain real estate and other property in Tennessee to secure an issue of bonds. The petitions setting up the lien claimed under this mortgage were answered by the Nashville, Chattanooga & St. Louis Ry. Co. in the name of the Trustee in Bankruptcy, pursuant to leave granted by the Referee. Various defenses were set up in this answer, among others, that this mortgage was executed and recorded in Tennessee before the bankrupt, which was a New York corporation, had recorded or filed its charter in the office of the Secretary of State of Tennessee, as required by law, and that during the interval of about seven months between the date of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mortgage and the date the charter was recorded in Tennessee, the bankrupt had a resident agent in Tennessee and was engaged in developing the property covered by the mortgage in erecting buildings, opening mines and doing other acts constituting a doing of business in Tennessee.

The Referee being of opinion that as the mortgage had been executed and recorded in Tennessee before the charter of the bankrupt was recorded in the office of the Secretary of State, it was, under the laws of Tennessee, void, without passing upon the other defenses raised by the answer, ordered and adjudged that the intervening petitioners were not secured creditors and had no lien or priority against the property described therein, and dismissed their original and amended petitions with costs; and the present petition was thereupon filed to review this order.

The mortgage in question is dated June 1, 1909. It was executed by the bankrupt, a New York corporation, to the Windsor Trust Co., another New York corporation, as trustee. The Referee in his opinion, which is handed up with his certificate, does not find either the date or place of its execution or delivery, nor by whom it was recorded or caused to be recorded in Tennessee, nor that the bankrupt prior to the time its charter was recorded in the office of the Secretary of State had a resident agent in Tennessee or was actually engaged in carrying on business therein, nor where the bonds were sold or negotiated; nor do any of these matters appear from any of the testimony incorporated in the Referee's opinion or cited in the briefs of counsel. (See former rule 82 of this court; new rule 45, cl. 7.)

The mortgage, however, shows on its face that it was acknowledged by the officers of the bankrupt and of the trustee, in the city of New York, on July 12 and 13, 1909; and further that it was executed to secure the payment of bonds payable at the office or agency of the bankrupt in the city of New York. It was recorded in Tennessee on July 21, 1909.

Sections 2 and 3 of the Tennessee Act of 1891, c. 122, p. 264, as amended by sections 1 and 2 of the Act of 1895, c. 81, p. 123 (Shannon, §§ 2546, 2547), provide:

"That each and every corporation created or organized under, or by virtue of, any government other than that of this state, for any purpose whatever, desiring to own property or carry on business in this State, of any kind or character, shall first file, in the office of the Secretary of State, a copy of its charter;" and "That it shall be unlawful for any foreign corporation to do business, or attempt to do business, in this state without first having complied with the provisions of this chapter; and a violation of this statute shall subject the offender to a fine of not less than $100.00 nor more than $500.00, in the discretion of the jury trying the case."

After careful consideration I am constrained to hold that the mere fact that the bankrupt, a foreign corporation, is shown to have executed and delivered to another foreign corporation a mortgage conveying property in this state, which was acknowledged in the State of which such two corporations were residents, and was given to secure an indebtedness payable in such other State, is not sufficient to render such mortgage void under the provisions of the Tennessee Acts above

quoted, even though it appears that such mortgage was subsequently recorded in Tennessee.

1. Even though a foreign corporation has not complied with the provisions of a domestic statute requiring its charter to be filed or recorded before it shall engage in business within the State, a contract entered into by it is presumed not to have been made in violation of law, and even though the contract be one in reference to property within the State, in order to render it void, it must be made affirmatively to appear that the contract was entered into within the · State. Railway Co. v. Fire Assoc'n, 55 Ark. 163, 173, 18 S. W. 43; White River Lumber Co. v. Improvement Assoc'n, 55 Ark. 625, 626, 627, 18 S. W. 1055; Friend v. Gin Co., 59 Ark. 86, 93, 26 S. W. 374. Thus in White River Lumber Co. v. Improvement Assoc'n, supra, it was held that a foreign corporation which had not complied with the provisions of the Arkansas statute prescribing the conditions under which foreign corporations might do business in the State, could nevertheless recover the rents due under a contract for the lease of land situated in the State, as it did not appear that the lease had been entered into within the State. The court said:

"Now it is not alleged in the complaint or answer, nor shown by the proof admitted or that excluded, that the contract sued on was made in this State or in the course of business done here; for aught that appears it may have been made in a foreign State in the course of a business lawfully done there, and in the absence of a showing 'the law will not imply facts disclosing the illegality of the contract. If it was lawfully made abroad, there is nothing in the laws of this state to preclude a recovery upon it in our courts. *The prohibition relied upon is against doing business here, and not against doing business abroad that relates to property here.* And the making of a lease abroad and taking an obligation for the rent is not doing business here within that prohibition, although the demised premises are in this State. The law was designed to regulate corporations that come within the State to transact business with its citizens, and not such as might be found and dealt with abroad."

In the case at bar there is not only no presumption that the mortgage was executed and delivered in Tennessee, but the reasonable inference from the meagre facts which do appear is that it was in fact executed and delivered by the bankrupt to the trustee in the city of New York where it was acknowledged. And as such execution and delivery of the mortgage would have been sufficient to convey title under the mortgage, as between the bankrupt and the trustee, it may well be presumed, if this should be material, that the registration of the mortgage in Tennessee was subsequently done at the instance of the trustee, after the mortgage had been executed and delivered to it.

2. In 13 Am. & Eng. Enc. of Law (2d Ed.) 881, it is said:

"The statutes under consideration have no application to contracts made . outside of the domestic States and present no bar to the right of a foreign corporation to enforce such contracts in the domestic courts."

This question is furthermore controlled, by direct analogy, by the case of Neal v. New Orleans Assoc'n, 100 Tenn. 607, 46 S. W. 755, in which it was held that where a building and loan association of Louisiana having no office or agency in this State, made direct from its home office in Louisiana a loan payable in Louisiana and to be secured

by a mortgage on real estate in Tennessee, the Tennessee statute did not apply.  The court said:

"The loan secured by the mortgage executed by complainant to defendant company is payable in New Orleans, in the State of Louisiana, and each of the installment notes is so payable.  The contract is essentially a Louisiana contract, and does not contravene any statute of this State.  The defendant company, at the time this contract was made, was domiciled in the State of Louisiana; it had no local board or agency here, and was not carrying on business in this State in the sense of the statute.  It was therefore not amenable to the statute requiring a foreign corporation to register its charter as a condition of doing business in this State."

So in Norton v. Union Bank, 46 S. W. 544, it was held by the Tennessee Court of Chancery Appeals, in an opinion which was affirmed orally by the Supreme Court of Tennessee, that a foreign corporation having no agent or place of business within the State, which loaned money on applications sent to it by loan brokers who were agents of the borrowers, was not doing business in the State within the meaning of the Act of 1891, and that notes and mortgages so taken might be enforced by it.

And in State v. Insurance Co., 106 Tenn. 282, 287, 61 S. W. 75, 76, a case arising under the Tennessee statute imposing a privilege tax on foreign insurance companies doing business in the State, the court said:

"We think it clear that a foreign insurance company which issues to a citizen of Tennessee a policy is not doing business in Tennessee, if it receives the application in a foreign State, and without solicitation in Tennessee, and if it, in addition, executes and delivers the policy and receives the premiums in such foreign State.  In such case there cannot be said to be any 'doing of business' in Tennessee by the foreign corporation that would subject it to tax."

In this connection it is to be noted that in the earlier case of New York Assoc'n v. Cannon, 99 Tenn. 344, 41 S. W. 1054, in which a mortgage executed in Tennessee to a foreign building and loan association was held invalid, it not only affirmatively appears from the opinion that the mortgage was executed in Tennessee, but that the loan was made and the mortgage taken in the ordinary and regular course of the business of the association, carried on, it may be fairly inferred, in the light of the subsequent opinions of the Supreme Court of Tennessee, through a local office and resident agents.  And see Cary-Lombard Lumber Co. v. Thomas, 92 Tenn. 587, 22 S. W. 743, and Harris v. Water & Light Co., 108 Tenn. 245, 246, 67 S. W. 811, in which the invalidity of contracts entered into by a foreign corporation which has not complied with the provisions of the Acts, is declared only as to contracts entered into by it in this State; also State v. Telephone Co., 114 Tenn. 195, 201, 86 S. W. 390.

In 13 Am. & Eng. Enc. Law (2d Ed.) 872, it is said:

"The following acts have also been held not to constitute doing business within the meaning of the statutes: * * * A loan of money to a resident of the domestic State through brokers domiciled outside of the State, the whole transaction being consummated outside of the domestic State (citing American Mtg. Co. v. Pierce, 49 La. Ann. 390 [21 South. 972]; Scottish Mtg. Co. v. Ogden, 49 La. Ann. 8 [21 South. 116]; Reeves v. Harper, 43 La. Ann. 518 [9 South. 104], and Scruggs v. Mtg. Co., 54 Ark. 566 [16 S. W. 563]); loaning money to a citizen of the domestic State secured by mortgage on land in that State

where the bond secured is dated and made payable in the State of the domicile of the corporation (citing Caesar v. Capell [C. C. W. D. Tenn.] 83 Fed. 403)."

And, in general, the doing of a single act of business in the domestic State by a foreign corporation does not constitute the doing or carrying on of business within the meaning of the statutory provisions. 13 Am. & Eng. Enc. Law (2d Ed.) 869, citing various cases in note 3.

3. It follows that under the authorities above cited, it must be held that under the facts appearing in the record, as above set forth, the mortgage in question is not affirmatively shown to have been executed and delivered in violation of the Tennessee statutes in question, and that the Referee was in error in adjudicating its invalidity upon that ground and dismissing, for that reason, the original and amended petitions in which the petitioners sought to enforce their lien under the mortgage. It is therefore unnecessary to determine whether if the mortgage had been shown to have been invalid under these statutes the Trustee would be in a position to question the validity of the mortgage, under the general rule that the bankrupt corporation having executed the mortgage in question could not set up as a defense thereto the fact that it was not authorized to execute it because of non-compliance with the statutory requirements. 15 Am. & Eng. Enc. Law (2d Ed.) 898, and cases cited in note 6. And see Harris v. Runnels, 12 How. 79, 13 L. Ed. 901.

4. A decree will accordingly be entered overruling the order of the Referee in question upon the ground upon which the same was based, as shown in his opinion, and, since the Referee did not make any adjudication as to the other defenses set up in the answer of the Trustee, returning the record to him with instructions to take further proceedings in reference to such other defenses as may not be inconsistent with this opinion.

5. In this connection the attention of counsel is called to the character of the briefs submitted in support of and in opposition to the petition for review. Former Rule 82, which was in force when the Referee's certificate was filed and which has since been superseded by Rule 45 promulgated September 12, 1912, contemplates that after the filing of the Referee's certificate briefs in support of and in opposition to the petition to review shall be filed in this court, which shall deal only with the questions arising under the petition to review, and which shall contain appropriate citations to the record. None of the briefs comply with this rule in reference to citations. The brief in opposition to the petition to review was furthermore filed before the brief in support thereof had been filed, and is in large measure not responsive thereto and deals principally with questions not passed on by the Referee.