MAY CHITTIM, VIRGINIA Z. HEJDE, CHARLES B. CHITTIM and FRANCIS HEJDE, Plaintiffs and Appellants,

v.

BELLE FOURCHE BENTONITE PRODUCTS COMPANY, A Corporation, Defendant and Respondent.

MAY CHITTIM, VIRGINIA Z. HEJDE, CHARLES B. CHITTIM, and FRANCIS HEJDE, Plaintiffs and Respondents,

v.

BELLE FOURCHE BENTONITE PRODUCTS COMPANY, a Corporation, Defendant and Appellant.

(Nos. 2274, 2278; May 23, 1944; 149 P. 2d 142.)

For the plaintiffs and appellants in case No. 2274, and the plaintiffs and respondents in case No. 2278, there were briefs by Otis Reynolds, of Sundance, Wyoming, and Dan McCutchen, of Belle Fourche, South Dakota, and oral arguments by Mr. Reynolds.

For the defendant and respondent in case No. 2274, and the defendant and appellant in case No. 2278, there were briefs by Preston T. McAvoy, of Newcastle, Wyoming; R. A. Smiley, of Belle Fourche, South Dakota; R. C. Hayes and Alex Rentto, both of Deadwood, South Dakota, and oral arguments by Mr. McAvoy, Mr. Smiley and Mr. Hayes.

240

## OPINION

RINER, Justice

The plaintiffs, May Chittim, and her husband Charles B. Chittim, Virginia Z. Hejde, and her husband Francis Hejde, in this review proceeding No. 2274, appellants, brought suit in the District Court of Crook County, Wyoming, against the Belle Fourche Bentonite Products Company, as defendant and respondent here, to quiet their title to certain bentonite placer mining claims located in said county. The plaintiffs, who will usually be thus designated hereinafter, alleged that the defendant, a South Dakota corporation, and subsequently referred to, for convenience, as the "Bentonite Company," or as the "defendant,"

claimed an interest or estate in the premises included in the said mining claims and that the assertion of this interest was entirely without right.

The Bentonite Company's answer to this suit was in the nature of a general denial and also allegations by way of counter-claim that its predecessors in interest had, prior to the location of the mining claims described in plaintiffs' pleading, and when the lands involved were public mineral lands of the United States subject to entry, located according to law, all the premises thereafter embraced in plaintiffs' alleged mining claims as certain other mining claims, and the defendant had done the necessary annual assessment work thereon after acquiring by purchase the right, title and interest of said prior locators; also that as a consequence at the time plaintiffs made their alleged placer mining locations the ground attempted to be included therein was not open to entry or location by said plaintiffs, and that their claims were wholly without any right whatsoever.

To this answer and counter-claim plaintiffs interposed the defense of a general denial; and additionally alleged that the locators of the placer mining claims, ownership of which is asserted by the defendant, were mere "dummies" employed by the defendant to enable it to obtain more placer mining ground than it was by law entitled to locate, and therefore the locations on which the defendant relied were invalid; that the Bentonite Company being a corporation organized and existing under the laws of the State of South Dakota, had never complied with the law of this state regarding foreign corporations so as to permit it to do business in Wyoming, yet it nevertheless had done business in this state regardless of its failure to obey such law, and that in consequence it had no right

to acquire the placer mining claims from its predecessors or to do annual assessment work thereon; that because of this failure to obey Wyoming law it had no right to prosecute its counter-claim aforesaid or to do annual assessment work on the placer claims to which it asserts title; and that the defendant in fact failed to perform any assessment work in the legal amount of $100.00 worth of work upon each or any one of the five pretended mining claims of which it asserts it is now the owner during the year beginning July 1st, 1940, and ending June 30th, 1941, and hence the defendant forfeited all the rights it ever had in and to said lands.

The Bentonite Company replied to these alleged defenses by general and specific denials thereof, asserting affirmatively that it has done nothing in Wyoming except what a foreign corporation was legally entitled to do, and that it has never forfeited the premises claimed by it on account of failure to do the legally required annual assessment work.

The foregoing statement sets forth a brief outline of the substance of the pleadings of the parties and is deemed sufficient to present the principal contentions advanced by them in their briefs and upon oral argument.

The case was tried by the Court without a jury. The judgment rendered was in favor of plaintiffs concerning most of the claims whose title they sought to have quieted, but in favor of the defendant as to one of the placer claims to which it also asserted ownership. In order that the scope and effect of this judgment may be readily and fully understood it is here reviewed somewhat in detail.

The Court found that on August 10, 1929, the defendant's predecessors in interest made a discovery

of bentonite upon each of the following described placer mining claims, to-wit:

"Black Hills No. 10 and covering the Lots 12, 13, and 14 of Section 32 in Resurvey Township 56, North of Range 60 West of the 6th P. M., Wyoming;
Black Hills No. 11 and covering the Lot 8 of Section 5 in Resurvey Township 55 North of Range 60 West of the 6th P. M., Wyoming;
Black Hills No. 13 and covering the Lot 8 of Section 6 in Resurvey Township 55 North of Range 60 West of the 6th P. M., Wyoming;
Black Hills No. 14 and covering the Lots 12, 13, 18, and 19 of Section 31 in Resurvey Township 56 North of Range 60 West of the 6th P. M., Wyoming;
Black Hills No. 15 and covering the Lots 14, 15, 16, and 17 of Section 31 in Resurvey Township 56 North of Range 60 West of the 6th P. M., Wyoming;"
and that they located each of said claims and recorded a location certificate for each claim in the manner provided by law; that these locations were bona fide locations by and for the benefit of each locator and that each received the full benefit thereof and none of said locators were "dummies."

After finding that the defendant was a foreign corporation created under South Dakota law, the Court also found that the Bentonite Company had never complied with the Constitution and laws of this state relative to foreign corporations transacting business in Wyoming; that several years prior to July 1, 1940, the locators of the claims described in the preceding paragraph conveyed their interest in said claims to the defendant, and that the defendant was not prohibited under Wyoming's constitutional and statutory law from acquiring or holding unpatented placer mining claims in Wyoming, or from doing the annual assessment work thereon.

It was, however, found that the defendant, on and prior to June 30, 1941, had forfeited all its right to

the placer mining claims designated Black Hills Nos. 11, 13, 14, and 15, as above described in that it had wholly failed to perform the annual assessment work worth the amount of $100.00 upon and for the benefit of each or any one of these four claims during the year beginning July 1, 1940, to and including June 30, 1941, as required by law, and each of said claims "became subject to relocation"; that the defendant, during the year last mentioned, did do the assessment work on and for the benefit of the Black Hills placer mining claim No. 10, worth the amount of $125.00; that during said year the defendant failed to do $500.00 worth of assessment work on all of said five claims for the benefit of all of said claims; that the defendant failed during said year to do $500.00 worth of assessment work on any one of these claims for the benefit of all of them or to do $500.00 worth of assessment work off said clamis for their benefit, or to do $500.00 worth of assessment work for the benefit of these five claims "combining and including the total amount of the work done on the claims and off the claims as a whole."

The Court found also that each of the plaintiffs as well as each of the locators of the five claims aforesaid, at the time of making the locations involved in this litigation, were citizens of the United States of America.

Finding that the plaintiffs, on February 1, 1942, discovered bentonite upon each of the following claims, to-wit:

"The Sundance Placer Mining Claim No. 2, and covering the Lot 8 of Section 5 in Resurvey Township 55 North of Range 60 West of the 6th Principal Meridian;
The Sundance Placer Mining Claim No. 3, and covering the Lot 8 of Section 6 in Resurvey Township 55

North of Range 60 West of the 6th Principal Meridian,"

The Sundance Placer Mining Claim No. 4, and covering the Lots 13 and 18 of Section 31 in Resurvey Township 56 North of Range 60 West of the 6th Principal Meridian;

The Sundance Placer Mining Claim No. 5, and covering the Lot 19 of Section 31 and the Lot 13 of Section 32 in Resurvey Township 56 North of Range 60 West of the 6th Principal Meridian;

The Sundance Placer Mining Claim No. 6 and covering the Lot 12 of Section 31 and the Lot 12 of Section 32 in Resurvey Township 56 North of Range 60 West of the 6th Principal Meridian;

The Sundance Placer Mining Claim No. 7 and covering the Lot 14 of Section 32 in Resurvey Township 56 North of Range 60 West of the 6th Principal Meridian;"

the Court additionally found that on February 5, 1942, the plaintiffs discovered bentonite upon each of the two claims described as:

"The Sundance Placer Mining Claim No. 8 and covering the Lots 14 and 15 of Section 31 in. Resurvey Township 56 North of Range 60 West of the 6th Principal Meridian;

The Sundance Placer Mining Claim No. 9 and covering the Lot 17 of Section 31 in Resurvey Township 56 North of Range 60 West of the 6th Principal Meridian."

each of these claims being located and their location certificates recorded in the manner provided by law.

A finding was also made that at the date of plaintiffs' location of February 1st, 1942, and February 5th, 1942, there were open to relocation by the plaintiffs, and that they, by virtue of their locations thereon, were entitled to the exclusive possession of and all the bentonite and minerals in:

"The Lot 8 of Section 5 and the Lot 8 of Section 6 in Township 55 North of Range 60, and the Lots 12, 13, 14, 15, 17, 18, and 19 of Section 31 in Township

56 North of Range 60 West of the Sixth Principal Meridian, Crook County, Wyoming,";
that at the time plaintiffs attempted to make locations on the lands described as:

"Lots 12, 13, and 14 of Section 32 in Township 56 North of Range 60 West of the Sixth Principal Meridian, Crook County, Wyoming,"
these premises were subject to the prior locations of the defendant thereon and plaintiffs never acquired any rights therein, defendant being entitled to the exclusive possession of said lands and all the bentonite and minerals therein.

Judgment was entered awarding exclusive possession of and the minerals in the lands located by plaintiffs as described in the preceding paragraph, and the defendant restrained from interfering with their possession. A like judgment was entered in favor of the defendant concerning the lands last above mentioned as subject to the prior locations claimed by it. Plaintiffs were awarded judgment for costs.

The parties each reserved their exceptions to the findings adverse to them and the judgment based thereon. This action on their part has accordingly resulted in two direct appeal proceedings in this court, the present one by the plaintiffs, No. 2274, and another by the Bentonite Company, No. 2278. Inasmuch as both appeals are upon the same record and involve substantially the same questions to be determined, one opinion will suffice to dispose of them both.

## No. 2274

Before considering the contentions of the parties in this litigation it may not be out of place to make a few general observations inasmuch as bentonite appears to be a comparatively new substance so far as its commercial importance is concerned. I Lindley

on Mines (1914) 3rd Ed., Sections 92, 97, does not seem to mention bentonite at all among the minerals listed in that text. Bentonite may be described as a kind of clay derived from volcanic ash and having the clay mineral montmorillonite for its chief constituent. For many years the name bentonite was applied solely to a specific type of clay with unique characteristics then known to occur only in the vicinity of the Black Hills of Wyoming and South Dakota. The name was assigned it from the Benton geological formation in which the most extensive deposits of this peculiar variety of clay are found. See Nos. 401-403, Geological Survey Bulletins, 260-262, U. S. Geological Survey (1904). Other deposits have since been discovered in this and other states, notably California. See Industrial Minerals and Rocks (1937), Ch. 6, p. 129 et seq. published by The American Institute of Mining & Metallurgical Engineers; Bull. No. 28, "Bentonite in Wyoming," issued by the University of Wyoming (1939). The Nat. Enc. Vol. 2, p. 78, briefly describes bentonite as follows:

"BENTONITE, called also mineral soap and soap clay, a rock containing mostly the minerals montmorillite or beidellite. It consists essentially of hydrous silicates of aluminum, magnesium and iron. Bentonite is the product of the weathering of volcanic Tuffs or glassy Lavas, and is cream to olive green in color. Prominent characteristics are its colloidal nature and its ability to absorb water with consequent pronounced swelling, becoming frequently a slippery jelly. Normally it has the appearance of a waxy clay. There are numerous uses for bentonite as a detergent, a filler in paper making, scouring textiles, refining petroleum, de-inking newsprint, a water softener, and a base for drugs and beautifying clays. It is found in extensive beds in many places, being mined in some western states, as Wyoming and California."

The most complete as well as the most recent discussion of the properties, mining, preparation, and

utilization of bentonite which has come to our notice is "Technical Paper 609" issued by the United States Department of the Interior, Bureau of Mines (1940). There the statement is made:

"Wyoming reported the first discovery of bentonite and is credited with the first shipments—in 1888 from the Rock Creek district. It still ranks as the leading producer, and Wyoming bentonite usually is considered the standard for comparative studies."

Bentonite would appear to be a mineral within the definition adopted by the Court in McCombs v. Stephenson, 154 Ala. 109, 44 So. 867, and approved by the authors of Morrison's Mining Rights 16th Ed. (1936) p. 250, as follows: "any form of earth, rock, or metal of greater value while in place than the enclosing country or superficial soil." And Mr. Lindley, Vol. I, Lindley on Mines, 3rd Ed. (1914) Sec. 93, p. 156, sums up an exhaustive examination of the English and American case law on the subject with the statement:

"The real test seems to be the character of the deposit as occurring independently of the mere soil, valuable in itself for commercial purposes, that is near enough to a market to have a value."

It appears from the record in this case that bentonite is found in the form of beds of varying thickness—three to five feet—with an over-burden of shale and occasional so-called "iron rock" which must be removed in order to mine the merchantable deposit. This is usually done by means of machinery i. e., caterpillar-tractor and scraper, the over-burden being found to vary from some 20 feet in depth to nothing at all where the bentonite outcrops.

In Fred B. Ortman, 52 L. D. 467, 469, a matter that came to the attention of the Secretary of the Interior ni connection with proceedings in the United States Land Office at Sacramento, California, for the patent

of certain mining claims, the First Assistant Secretary stated that:

"The recorded notice of location is headed 'Notice of Location—Placer Claim.' It states that 'the following described placer mining grounds' are located, and the claim is denominated a placer claim. The deposit has been examined by a Government inspector, who reports that the land is 'underlain by a thick seam of colloidal clay, which has value for different purposes, principally the filtering of oils in the process of refining.' The propriety of locating the land as placer ground is not questioned."

So too in the record now before us no question is made by either of the parties that deposits of the character now under consideration should not be claimed under the federal and state law governing the location of placer ground.

The cause numbered here as 2274 is an appeal by the plaintiffs criticizing the judgment of the District Court of Crook County, in that it awarded the bentonite ground included within the aforesaid placer mining claim Black Hills No. 10, for 120 acres, to the defendant.

Recurring now to the contentions of the appellants advanced to sustain their position, our attention is directed first to the fact that in the original location of this claim No. 10, the amount of ground located was 160 acres, being for the southwest quarter of Section 32, Resurvey Township 56 North, Range 60 West of the 6th Principal Meridian, the recorded certificate of its location being dated August 1, 1929. An amended certificate was thereafter recorded by the same locators who made the earlier filing excluding approximately 40 acres and consequently leaving only 120 acres of the originally included ground, to-wit: the west half of the southwest quarter and the southeast quarter of the southwest quarter of said

Section 32, the date of said amended certificate being September 14, 1935. It is argued that as the defendant made no proof "that the boundaries of claim No. 10 were re-marked to conform to the re-location" that consequently the judgment should have been for the plaintiffs as to the ground embraced within this claim. We think this contention should fail for a number of reasons among which are:

The record discloses so far as can be told from an examination thereof that plaintiffs seem not to have raised or presented this question at all in the trial court. In Mercer v. Thorley, 48 Wyo. 141, 43 Pac. 2d. 692, this Court said:

"Furthermore, the general rule is that questions not raised in the court below, as seems to be true here, cannot be raised on appeal. 4 C.J. 1077. There are some exceptions to that rule. Walter v. Keuthe, 98 N.J. Law 823, 121 A. 624."

This matter would not appear to be within the exceptions to the rules referred to in the foregoing quotation. There are a number of reasons upon which this rule is based but as stated in 3 C.J. 692, 693:

". . . it is usually placed upon the ground that the opposite party should have the proper opportunity to avoid, by amendment or by supplying any defects in his proof, the effect of the objection."

See also 4 C.J.S. 434. As pointed out also by the Court in Jones v. Seymour, 95 Ark. 593, 130 S. W. 560:

"The object of requiring the parties to present all questions and issues to the lower court before they can be presented to this court is to have the lower court pass thereon so that this court upon appeal may determine whether or not such ruling was erroneous. The purpose is also in furtherance of justice to require the party to first present the question he contends for in the lower court, so that the other party may not be taken by surprise."

Again the record establishes without dispute that the original claim for 160 acres was properly marked on the ground. Both the original and amended certificates of location as recorded in the office of the County Clerk of Crook County, Wyoming, were received in evidence without objection on the part of the plaintiffs. There is no controversy between the parties as to the ownership of the ground excluded from the original location. The record in this case makes it very clear also that the reason why the amended certificate was executed and recorded was merely because the original location was so made and the certificates thereof so drawn as to include some land which was not open to location. There was no idea of taking in additional ground by means of the amended location and certificates. In other words the claim was simply an excessive location. Mr. Lindley says (II Lindley on Mines, 3rd Ed. 1059) :

"It is well settled that excessive locations are valid except as to the excess."

See also Adams v. Yukon Gold Company et al. 251 Fed. (C.C.A. 9th Cir.) 226. Sec. 70-106 W.R.S. 1931, after authorizing the filing of an amended certificate for certain purposes continues to say:

". . . provided, however, that such relocation shall not infringe upon the rights of others existing at the time of such relocation, and that no such relocation, or other record thereof, shall preclude the claimant or claimants from proving any such title or titles as he or they may have held under any previous location."

There is no claim made here that the original location was invalid for failure to properly mark its boundaries as the law directs. What the rule would be in case it was sought to take in ground not originally located it is not necessary for us to determine now. It would hardly seem that it was necessary that

an amended location or certificate be made. Morrison's Mining Rights 16th Ed. 267, declares the rule to be:

"Where a placer claim is located by a legal subdivision it need not except or refer to fractions already patented. The record should claim the subdivision, leaving it to the Land Office to make the proper exclusion—changing the old ruling on this point.—Green v. Gavin, 10 Cal. App. 330, 101 P. 931, citing 43 (34) L.D. 44 and 31 L.D. 64."

See also McElligott v. Krogh, 90 Pac. 823, 825, 151 Cal. 126.

Additionally there seems to be no specification of error which in terms directed the attention of the trial court to this claim of error so that a new trial could have been granted by that Court if the point was considered to have been well taken. Sections 89-4908, 89-4910, W.R.S. 1931.

It is contended also on behalf of plaintiffs that the defendant employed certain persons as "dummies" to enable it to obtain title to more bentonite ground than it was legally authorized to locate when the Black Hills placer claim No. 10, was taken up. Locators of that claim were: M. E. Hafner, Rosa L. Hafner, W. I. Smith, Martin Berg, Vieno Berg, N. B. Odle, James T. McGuckin and Minnie Jane Smith. It is insisted that Martin Berg, Vieno Berk, his wife, and Rosa L. Hafner, the wife of M. E. Hafner, and Minnie Jane Smith, the wife of W. I. Smith, were not bona fide locators. No question is raised that these persons were not citizens of the United States and consequently entitled to locate placer mining claims. There is substantial proof too that a discovery of bentonite was duly made upon this claim and the trial court so found as was mentioned above.

Additionally relative to the point now under discussion it may here be properly recalled as heretofore recited that the trial court expressly found that the Black Hills No. 10 placer mining claim, in its original location, was a bona fide claim "by and for the benefit of each locator and that each locator received the full benefit thereof and none of said locators were 'dummies'." A careful examination of the record convinces us that there was substantial evidence to support this finding. While there was proof that Hafner, Smith, and Odle were officially connected with the defendant corporation that fact alone, it would seem, should hardly disqualify either them or their wives from serving as locators of the claim. There was affirmative testimony also that no agreement existed between the locators either before or at the time the claim was located either between themselves or with the defendant to convey it to the defendant. It is undisputed that the locators held this placer claim for nearly seven years before any sale of it was made to the defendant. There was proof also that the Bergs had no connection whatsoever with the defendant corporation or its officers; that when the claim was sold to the defendant many years after its location it was paid for by the defendant's issuing its stock to the original locators or to their nominees; and that none of these locators was dissatisfied with the stock payments thus made.

In Rooney v. Barnette et al., 200 Fed. (C.C.A. 9th Cir.) 700, the Court states that:

"There was room for a difference of opinion as to the fact whether the agreement between Barnette and the six absent locators as to his share in their individual interest in the claim was made before or after the location of the claim and the discovery of gold thereon. If made after the location and discovery, the agreement in no way affected the validity of the lo-

cation of the associated claim. Smelting Co. v. Kemp, 104 U. S. 636, 654, 26 L. Ed. 875."

With the rule announced in the last sentence of the foregoing excerpt, the authorities, as we understand them, have no quarrel. It is elementary mining law that when a valid discovery on and due location of mineral ground has been made, the claim as between the locator and everyone else save the United States, the paramount proprietor, is vested with all the attributes of a title in fee so long as the requirements of the law, with reference to continued development are satisfied. II Lindley on Mines, 3rd Ed. 1201, Section 539, declares:

"A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent. It is subject to administration and sale in payment of the debts of the deceased owner."

So the much later text of 36 Am. Jur. pp. 356-357, Sec. 107, puts the same principle in this form:

"Although the fee in the land included in a mining location remains vested in the United States until a patent is issued, a perfected mining claim itself is regarded as property in the fullest sense of that term and, as such, may be transferred or mortgaged, or pass by will or descent; it is subject to liens and to taxation and may be seized and sold under execution. While the locator's rights are only possessory, his interest is regarded as real property and accorded the same protection as other classes of real estate."

After the claim was perfected the locators thereof certainly could agree among themselves as to what each should receive for their respective interests therein. So long as they were satisfied we fail to see how anyone else could complain. The use of "dummies" in locating mineral claims to obtain more ground than the law allows is a species of fraud upon the government. Fraud must be proven by clear, satisfactory,

and convincing evidence. We do not find such a situation presented by this record.

Another contention advanced on behalf of the plaintiffs is that the defendant, a foreign corporation, transacted business in Wyoming without complying with the constitutional and statutory law of this State governing such organizations and hence the mining location aforesaid could not be held by the Bentonite Company; so it is urged that the ground included therein was consequently subject to the subsequent location made by the plaintiffs..

It is a conceded fact here that the defendant has never undertaken to meet the legal requirements imposed upon foreign corporations doing business in this State. It is said, however, that because the Bentonite Company purchased and took conveyances of the mining claim in question, did assessment work thereon, and endeavored to sell it, this conduct on its part constitutes the transaction of business within the prohibitions contained in Section 5, Article X, of the Wyoming Constitution, Sections 28-141, 28-201, 28-203, 28-204, W.R.S. 1931. These contentions of the plaintiffs upon mature consideration we must decline to approve.

The trial Court concluded in substance as recited above that the Bentonite Company was not prevented under Wyoming law from acquiring or holding unpatented placer mining claims in this State, or from performing the annual assessment work thereon. We are inclined to think this view to be a correct statement of the law of this jurisdiction as applied to the facts appearing in the record at bar.

So far as attempting to sell the property involved raised any question herein, it may be observed that there is no proof that a formal offer was made by

the defendant to sell it to anyone. The most that can be claimed, as we view the evidence submitted herein, is that several of the officers of the defendant tentatively discussed or corresponded with others about the matter, but it seems that nothing ever came of these efforts. But even if there had been a bona fide offer to sell the property represented by this mining claim held by the Bentonite Company, we do not think this fact, either, would have constituted the transaction of business in Wyoming in violation of our fundamental and statutory law. In the case of In re Tennessee River Coal Company, 206 Fed. 802, the Court said:

"Even though a foreign corporation has not complied with the provisions of a domestic statute requiring its charter to be filed or recorded before it shall engage in business within the State, a contract entered into by it is presumed not to have been made in violation of law, and even though the contract be one in reference to property within the State, in order to render it void, it must be made affirmatively to appear that the contract was entered into within the State. Railway Co. v. Fire Assoc'n. 55 Ark. 163, 173, 18 S.W. 43; White River Lumber Co. v. Improvement Assoc'n., 55 Ark. 625, 626, 627, 18 S.W. 1055; Friend v. Gin Co., 59 Ark. 86, 93, 26 S.W. 374."

17 Fletcher Cyc. Corp., p. 527, Sec. 84, 86, says that:

"Nor is a foreign corporation carrying on business in the state merely by holding property therein and in doing things necessary to the care and protection of such property, and to the preservation of the title."

In Lakeview Land Company v. San Antonio Traction Company, 95 Tex. 252, 66 S.W. 766, this was said:

"There is no law in Texas which prohibits corporations created in other states to purchase and hold land and personal property in this state, if authorized by their charters or the laws under which they were created. The charter of appellant conferred that power; therefore the title to the land and contract

vested in appellant. 6 Thomp. Corp. § 7913. The purchase in this case was made outside of this state, and did not constitute the 'transaction of business within the state,' as expressed in articles 745, 746, Rev. St. Security Co. v. Panhandle Nat. Bank, 93 Tex. 575, 57 S.W. 22. The purchase of the land and contract under the facts alleged did not violate any law of Texas."

And 23 Am. Jur., Sec. 371, pp. 356, 357, says that:

"As a general rule, therefore, a foreign corporation will not be regarded as doing business in the state because it enters into contracts with residents of the state, where such contracts are consummated outside the state. The rule is especially applicable where such contracts are to be performed in other states, and is not altered, in the ordinary case, by the fact that some acts incidental to such a contract are done in the state, or even by the fact that the contract relates to property in the state. For purposes of his rule, the place where the contract is delivered and accepted, rather than the place where it is formally drawn or where preliminary negotiations take place, is ordinarily determinative of the situs of the contract."

In Orman v. Bransford Realty Co., 168 Tenn. 70, 73 S.W. 2d. 713, 717, the Court remarked:

"The charge of illegality touching these investments outside of this state rests on the theory that the corporation in making them was 'doing business' in foreign states without qualifying therein. The mere purchase of lands by a corporation within a foreign state is not generally held to be a doing of business in the given state, in the sense of the statute's requiring qualification. Certainly the corporation which has made such investments should not voluntarily abandon their holdings, but should follow up and conserve them."

Our case of State ex rel. Eaton v. Hirst, 53 Wyo. 163, 79 Pac. 2d 489, decided that the mere payment of taxes and the redemption of property from a tax sale by a foreign corporation did not constitute the transaction of business within the State of Wyoming,

under the latter's constitutional and statutory provisions of law referred to above and many authorities were cited and reviewed in support of the rule.

In the case before us the deeds to the mining claim, Black Hills placer claim No. 10, from the locators thereof to the Bentonite Company, were all delivered and accepted by the defendant in the State of South Dakota where the corporation was organized. These deeds were admitted in evidence upon stipulation of the parties without objection. So far as the performance of annual labor upon this claim is concerned, that, it seems to us, is quite like the payment of taxes discussed in the Hirst case, supra. Both the federal and the state law alike require annual assessment work to be performed upon an unpatented mining claim under penalty for failure to observe the requirement of rendering the ground open to re-location and thus forfeiting the mining claim. In the case of taxes, if they are not paid when due, the land may pass to tax sale and ultimately into another ownership, and the original owner of the property loses his rights in the land thus sold unless he redeems from the sale as the law directs. It is difficult to perceive that the defendant should be penalized for doing exactly what the law required it to do. In performing the annual assessment work upon the placer claim in question the Bentonite Company was merely protecting its title for which it had paid value even as the corporation in the Hirst case was doing by means of tax payments and through redeeming its property from tax sale. For these reasons among others that might be mentioned, and upon the authorities above reviewed, we think the conclusion of the District Court under consideration should not be disturbed.

The contention is made that the Bentonite Company failed to do sufficient annual assessment work on the

placer mining claim Black Hills No. 10. Regarding this point there is a simple but all sufficient answer. The District Court of Crook County made its finding on the facts presented to it by this record, as we have seen, that the defendant, during the year beginning July 1st, 1940, and ending June 30th, 1941, "did assessment work on and for the benefit of the Black Hills No. 10 Bentonite Placer Mining Claim, worth the amount of $125.00." The evidence in the case relative to the matter, both as to the amount of the work done by the defendant and the value thereof was in serious conflict. There was, however, substantial evidence to suport this finding of the trier of the facts in the case. No useful purpose would be accomplished by detailing the evidence on the point. It would not aid as a precedent and would serve only to unduly lengthen this opinion. We shall not extend this discussion with citations of the decisions of this Court which have so often announced the rule, that under circumstances of this kind such a finding will not be disturbed. It follows, from what has been said, that that portion of the judgment below involved in this appeal should be affirmed.

## No. 2278.

This is an appeal by the defendant, the Belle Fourche Bentonite Products Company, from that part of the judgment described in case No. 2274, supra, this day decided, which decreed that:

"It is therefore Ordered, Adjudged and Decreed that the plaintiffs be and they are hereby awarded the exclusive possession of the following described lands and premises, to-wit:

The Lot 8 of Section 5 and the Lot 8 of Section 6 in Township 55 North of Range 60, and the Lots 12, 13, 14, 15, 17, 18, and 19 of Section 31 in Township 56 North of Range 60 West of the Sixth Principal Meridian, Crook County, Wyoming,

together with all the bentonite and minerals thereon, as against the defendant and the said defendant is hereby enjoined and restrained from in any manner interfering with the possession of the said plaintiffs and from trespassing upon the said premises."

That decree was based upon the following finding of fact:

"That the defendant herein on and prior to June 30, 1941, wholly abandoned the aforesaid Black Hills No. 11, Black Hills No. 13, Black Hills No. 14 and Black Hills No. 15 bentonite placer mining claims, and forfeited and abandoned any and all rights of every kind and nature therein, in that defendant wholly failed and neglected to do and perform assessment work worth the amount of One Hundred Dollars upon and for the benefit of each, or any one, of said 4 placer mining claims during the year beginning July 1, 1940, and ending June 30, 1941, as required by law; and that by reason of such failure to do and perform such assessment work, the defendant forfeited any and all rights of every kind and nature which it ever at any time had or held in and to said lands, and said 4 claims and each of them thereupon became subject to relocation. * * * That during said year defendant failed and neglected to do $500.00 worth of assessment work on all of said 5 claims, to-wit: Black Hills No. 11, Black Hills No. 13, Black Hills No. 14, Black Hills No. 15 and Black Hills No. 10 for the benefit of all said claims. That during said year defendant failed to do $500.00 worth of assessment work on any one of said 5 claims for the benefit of all the said claims. That during said year defendant failed to do $500.00 worth of assessment work off the said 5 claims for the benefit of said claims. That during the year aforesaid, beginning July 1, 1940 and ending June 30 ,1941, defendant failed and neglected to do $500.00 worth of assessment work for the benefit of the 5 claims aforesaid, combining and including the total amount of the work done on the claims and off the claims as a whole."

We are asked by the defendant to overthrow this finding of fact and set aside the judgment rendered

thereon as not supported by the evidence in this record. This we must decline to do for the reasons given and the applicable rule mentioned in regard to the finding of the Court relative to the annual assessment work which was done by the defendant for the benefit of the placer mining claim, Black Hills No. 10, in case No. 2274, hereinabove described and determined. See also Peterson v. Johnson, 46 Wyo. 473, 28 Pac. 2d 487; Kaleb et al. v. Modern Woodmen of America, 51 Wyo. 116, 64 Pac. 2d 605; McMahon v. Midwest Refining Co., 36 Wyo. 90, 252 Pac. 1027.

Other questions are submitted in this appeal on behalf of the plaintiffs and respondents but as they are identical with those determined adversely to them in case No. 2274, they will require no further consideration in this proceeding. It results that the portion of the judgment appealed from in this cause should accordingly be affirmed.

Our conclusion upon the judgment as an entirety and under review in both these cases, is that it should not be disturbed and it will, therefore, be affirmed. Each of the parties will pay their own costs in both of these cases.

*Affirmed.*

KIMBALL, C. J., AND BLUME, J., concur.