ANNAJEAN A. RAYBURNE
*Plaintiff and Appellant,*

vs.

O. H. QUEEN and ALICE QUEEN
*Defendants and Respondents.*

(No. 2744; November 13th, 1956; 303 Pac. (2d) 486)

394

For the plaintiff and appellant, the cause was submitted upon the brief and also oral argument of Scotty Gladstone of Sundance, Wyoming.

For the defendants and respondents, the cause was submitted upon the brief of Reynolds & Lathrop of Sundance, Wyoming, and oral argument by Mr. Carl L. Lathrop.

## OPINION

Mr. Justice Parker delivered the opinion of the court.

Annajean A. Rayburne (appellant), lessee of the N½ sec. 34, T. 53 N., R. 62 W., 6th P.M., under a Wyoming grazing lease, to expire February 1, 1955, filed an application for a renewal of the lease on November 24, 1954, about a month after O. H. and Alice Queen (respondents), had filed a conflicting application for rental of the same property. When the commissioner of public lands decided the conflict in favor of the Queens, Rayburne appealed to the board of land commissioners who upheld the commissioner's decision. Thereupon, Rayburne appealed to the District Court of Crook County. Queens' counsel moved to dismiss because Rayburne had failed to file the appeal in the district court within thirty days after the board's decision. Queens' motion was sustained, the appeal to that court was dismissed, and Rayburne has now appealed to this court.

As is shown by Queens' motion to dismiss, the *sole* question presented to the lower court was, Did Rayburne file notice of appeal within the thirty days permitted for an appeal from a decision of the board of land commissioners by § 24-306 and related sections, W.C.S. 1945?

The said motion to dismiss stated that:

"Said Annajean A. Rayburne, the party appealing, *failed to file* with the Commissioner of Public Lands of Wyoming or in said District Court *within thirty days after the decision complained of,* rendered by the Board of Land Commissioners of Wyoming at its meeting held on May 11 and 12, 1955, a notice in writing to the said Board of Land Commissioners stating that such party intends to appeal to said District Court." (Emphasis supplied.)
and the court's order provided that:

" * * * 'the motion to dismiss appeal' * * * be and the same hereby is granted, allowed and sustained [and] * * * the said appeal * * * is hereby dismissed * * *."

Notwithstanding the *single* issue thus presented, counsel for the Queens now present *four* other contentions which, although not raised below, will be mentioned and discussed briefly.

1. *"The motion to dismiss this appeal for want of a duly certified record of the proceedings before the board of land commissioners should be sustained."*

The present complaint is that the certificate, though in proper form is unsigned. Whether or not this is a valid objection need not here be discussed for the motion to dismiss comes too late. The matter was not raised in the district court. The motion for dismissal there was based upon the ground of late filing by the appellant.

" * * * this court will, as a matter of general practice, review only those issues and questions submitted to the trial court * * *." (Application of Northern Utilities Co. for an increase in rates. Natural Gas Consumers of Rock Springs v. Northern Utilities Co. of Casper), 70 Wyo. 225, 247 P.2d 767, 779.

See also Chittim v. Belle Fourche Bentonite Products Co., 60 Wyo. 235, 149 P.2d 142; Mercer v. Thorley, 48 Wyo. 141, 43 P.2d 692; Claughton v. Johnson, 47 Wyo. 447, 38 P.2d 612; 47 Wyo. 536, 41 P.2d 527. If respondents had wished to urge the lack of certification of the record, they should have presented such views to the trial judge, then acting in the role of an appellate court, with authority to return the record for amendment. See Pósvar v. Pearce, 37 Wyo. 509, 263 P. 711.

2. *"If there is a record in this case, then Rule 37 of theSupreme Court has not been obeyed in compiling the abstract of record."*

Rayburne's admitted failure of compliance with Rule 37 is serious, though not fatal. Inasmuch as the instant case presents a problem of general interest, the determination of which we think will be of benefit to the citizens of the State, we are exercising our discretion to decide rather than to dismiss it. However, because of appellant's noncompliance with the rule, we hereby assess costs against her.

3. *"There is no statute requiring a written notice of the decision of the board of land commissioners to be given to the parties."*

This contention of counsel is correct and is uncontroverted. There is no contention that a written notice is required to be given, and this point has no bearing on the outcome of the instant case.

4. *"The Memorandum of Decision upon 'Motion to Dismiss Appeal' is not a part of the record on appeal."*

This contention of counsel is also correct. Such "memorandum" will, in accordance with the argument of counsel, be given no consideration in this case.

We advert now to the principal question presented, i.e., Did Rayburne fail to file notice of intention to appeal within thirty days after the board rendered its decision? In considering this point, we find it desirable to take inventory of the prior happenings in this case insofar as we are permitted to view them. In so doing, we must base any scrutiny on one or the other of two premises:

(a) There was *not* in the lower court a record of the proceedings before the board of land commissioners, or

(b) there *was* in the lower court a record of the proceedings of the board of land commissioners.

Assuming the situation presented by the first premise —respondents' contention—that there was *no* such record in the district court, we are confronted with the fact that the court would then have had nothing before it as a basis for allowing a dismissal on the ground of late filing of the appeal. The motion itself contained insufficient information to support a termination of the appeal, and the order of dismissal could not stand.

Perhaps we should here amplify our previous reference to the trial court's authority to correct the record. The district court in this instance was acting as an appellate court and stood in the same relation to the board of land commissioners as does the supreme court to a district court.

Whether or not a record should be returned for amendment is in the discretion of this court. We are not unmindful of our rule often pronounced that it is the duty of the appealing party to see that the proper record and necessary papers are forwarded to the court to which the appeal is taken. See City of Casper v. Benaris, 74 Wyo. 58, 283 P.2d 1026, and authorities therein cited. Nevertheless, we think that an appellant is ordinarily entitled to assume that the record which he has filed is sufficient until objection is made thereto. This is particularly true in the light of § 24-308, W.C.S. 1945, which requires the commissioner of public lands to transmit a certified copy of all papers and documents relating to the board's decision. Some exceptions to this rule might be visualized, but we observe none in this instance.

This court has expressed its views regarding the desirability of having a correct record by its adoption of Rule 12 (§ 1-412, W.C.S. 1945). Independent of any such rule, the court has jurisdiction and authority to permit amendment of a record in its discretion; and we have discussed the general situation in various cases, either directly or tangentially:

" * * * 'the power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertences of counsel, or to supply defects or omissions in the record, is inherent in courts of justice.' * * * " School Dist. No. 3, Carbon County, v. Western Tube Co., 13 Wyo. 304, 80 P. 155, 157, quoting from Gagnon v. U. S., 193 U.S. 451 24 Sup.Ct. 510, 48 L.Ed. 745.

" * * * The court further seems to have laid down the rule that whether or not a record shall be returned for amendment is in the discretion of this court, but that, where it appears that the omission therefrom of an essential fact is due to the laches of the party

seeking relief—as it undoubtedly is in this case—the discretion should be used against him. * * * " Posvar v. Pearce, 37 Wyo. 509, 263 P. 711, 712.

"Counsel for appellant, has asked in his brief that if we should find the record on appeal insufficient, we should permit him to have it returned for correction. But he has made no showing of any kind authorizing us to do so, if we should be so inclined." Barnett v. Bankers' Finance Assn., 38 Wyo. 511, 268 P. 1025, 1026.

In the instant case, Rayburne filed in the district court what purported to be a record of the proceedings before the board of land commissioners. Actually, it was defective because the certificate was unsigned and respondents refer to the purported record as being merely a "bundle of papers." Whether the omission, obviously the fault of the commissioner, would vitiate the appeal need not here be determined. The question was not raised by the motion filed in the lower court. Had it been, undoubtedly Rayburne would have asked to be permitted to secure the commissioner's signature; and the court, in its discretion, might have permitted this to be done.

Let us now analyze the alternative premise and assume for the purpose of discussion that the purported record meant *something* and was not wholly ignored by the trial court. This must have been the fact, else how would it have been possible for the trial court to have sustained Queens' motion to dismiss because Rayburne had "failed to file * * * within thirty days after the decision complained of * * *." If the court took no note whatever of the purported record, how could the time element have been ascertained?

The happenings in the land board thus having received consideration below, it may not be amiss to here discuss the source of whatever information was then in the hands of the court.

(1) The commissioner's extract of the May 11 and 12 board meeting, which shows that there was a hearing on the Rayburne-Queen case and that the board "withheld action on this case pending a special Board meeting Monday, May 16, due to prior commitments of Miss Velma Linford for May 12." This extract contains the notation, "Approved by the Board of Land Commissioners June 2, 1955."

(2) The commissioner's extract of the May 16 board meeting, which shows that the board "rejects the application of Annajean A. Rayburne to lease the N½ of Sec. 34-53-62." This extract contains the notation, "Approved by the Board of Land Commissioners June 2, 1955."

(3) A letter from the commissioner to the Queens dated June 3, 1955, stating, "The Board of Land Commissioners at its meeting held May 11, 1955 approved the Commissioner's decision allowing the application of O. H. and Alice Queen."

(4) A letter dated June 3, 1955, to Rayburne stating, "The Board of Land Commissioners at its meeting held May 11, and 12, 1955, approved the Commissioner's decision allowing the application of O. H. and Alice Queen and disallowing the * * * application of Annajean A. Rayburne."

The contents of the above-mentioned extracts and letters as listed by the commissioner are, to say the least, conflicting and ambiguous. The statement in (1) that the board "withheld action * * * pending a special board meeting Monday, May 16" is wholly inconsistent with the notifications disclosed in (3) and (4) stating that the commissioner's decision was approved at the meeting held May 11 and 12. Moreover, the "extracts" do not show at what time the

minutes were actually written or when, if ever, they became available to the public.

A certificate of the commissioner attests that "pages numbers 55 and 56 [the extracts from the minutes] are true and correct copies of the Decisions of the Board of Land Commissioners of the State of Wyoming, made and rendered * * * on the 11th, 12th and 16th days of May, 1955." However ,this statement, itself being ambiguous, and inconsistent with the subsequent notices sent to the parties, can scarcely be given full credence. Neither the parties nor the court should be required to speculate regarding the date on which the board's decision was rendered, nor should any ambiguity or deficiency in the written evidence as compiled by the commissioner interfere with the right of the party appealing—at least until any such shortcoming has been called to the attention of the party claimed to be at fault and he has been provided an opportunity to remedy the defect.

Respondents in their effort to show that the appeal was filed out of time emphasize the words "decision" and "appeal" in § 24-306 and related sections. They further bolster their contention that the decision was rendered by the board of land commissioners on May 11 and 12 (although they also, by analogy with the case of Culbertson v. Ainsworth, 26 Wyo. 214, 181 P. 418, insist that the decision was rendered "not later than May 16, 1955") by pointing out that Rayburne in the notice of appeal to the district court said that the appeal was taken "from the decision of the Board of Land Commissioners rendered at its meeting held on May 11 and 12, 1955." This statement by Rayburne would at first seem to be quite serious, but when viewed together with the ambiguity of the extracts from the minutes and the reference in the commissioner's notices of June 3 to the meeting of May

11 and 12, it is excusable. Rayburne's counsel had merely fallen into a reasonable error, i.e., referring to a decision, not otherwise officially designated, as one "rendered" at a certain time. To hold such a designation to be fatal would, we think, be a harsh rule.

It is true that there was confusion, in which the commissioner and both parties participated; but as previously indicated, any dismissal of the appeal on such technical grounds should have been effected, if at all, only if the objecting party had himself presented a properly supported motion therefor.

In appeals to the supreme court in this State the time begins to run from "the entry of the order or judgment appealed from." See § 3-5402, W.C.S. 1945, as related to direct appeals, and the opinion in the case of Hahn v. Citizens' State Bank, 25 Wyo. 467, 171 P. 889, 172 P. 705, as to preceedings in error. We see no reason why a rule substantially different should apply to boards and agencies. Certainly a party must receive some notice either actual or constructive if he is to be bound by the decision. Here there is no claim that the appellant had actual notice prior to the letter of June 3. If she had any notice at all, it must have been constructive. We turn, therefore, to a review of the basis for the doctrine of constructive notice. The matter is well summarized in 39 Am.Jur., Notice and Notices § 7:

" * * * constructive notice * * * depends on two considerations: first, that certain things existing in the relation or the conduct of parties, or in the case between them, beget a presumption so strong of actual knowledge that the law holds the knowledge to exist because it is highly improbable it should not; and next, that the policy and the safety of the public forbid a person to deny knowledge while he is so dealing as to keep himself ignorant, or so that he may keep himself ignorant."

We think neither of these considerations apply in the instant case.

We could not better express our views regarding the time that the decision in this case was "rendered" than to repeat the statement of the United States Supreme Court in discussing an order of the Federal Power Commission which issued an order saying that a "certificate of public convenience and necessity * * * is hereby issued" on November 30, 1946, but did not make public announcement of the fact until December 1.

" * * * We need not linger long on the merely grammatical argument of that [the lower] court; it is given more weight than it can bear. Of course, the Commission has considerable administrative discretion to decide when an order may fairly be deemed to have been 'issued.' * * * But surely a certificate cannot be said to have been issued for purposes of defining rights and the seeking of reconsideration by an aggrieved person if its substance is merely in the bosom of the Commission. Knowledge of the substance must to some extent be made manifest. * * *." Skeyy Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 676, 70 Sup.Ct. 876, 94 L.Ed. 1194.

Basically, the matter comes down to a reasonable interpretation of the time the land board's decision was rendered—or, more narrowly, an interpretation of the word "rendered" in its reasonable application.

We find that Webster's New International Dictionary (2d ed. 1934), p. 2109, defines the word "render" as "to furnish for consideration or as the result of consideration; to state; deliver; as * * * to render judgment * * *."

Many applications and ramifications of the word could be presented, butit would serve no useful purpose to enter upon an extended discussion of the matter.

Procedure relative to court decisions has been cited as persuasive in governing the procedures before boards; and in general, we agree with the view thus presented. There is one obvious distinction, however, to which reference has been previously made. In courts, it is customary and usually requisite by statute or otherwise that a record of the decisions be made and that such record be available to the public. This is not always true of boards; and we find no statute prescribing the records which the board of land commissioners shall make available to the public. There is nothing to indicate that the land board's decision was actually rendered prior to June 3; and there is no showing of a statute, regulation, or custom, requiring the decision to be made available at any certain time. It follows, therefore, that in the normal course of events the parties would not be aware of what the board decided until the mailing of the notices.

The procedures in the office of the commissioner of public lands, of course, have no direct relationship to the procedures in the board of land commissioners; but as relates to the *commissioner*, it is interesting to note that he is required by statute to give the applicants notice of what his decision is, and the appeal time runs from the date notice is given. Just why the legislature provided for a notice to be given in the one instance and not in the other is unclear. Regardless of that fact, we think that any decision of the board of land commissioners, in order to be binding upon a party, must be made either (a) unequivocally in the parties' presence or (b) by a written record of the board's decision which is actually available to the public.

For the reasons above stated, this case is returned to the district court with instructions to proceed in a manner not inconsistent with the views herein expres-

sed, and, specifically, to deny respondents' motion to dismiss the appeal.

Reversed and remanded.

## ON PETITION FOR REHEARING

(No. 2744; January 29th, 1957; 306 Pac. (2d) 367)

In support of the petition, there was a brief by Reynolds & Lathrop of Sundance, Wyoming.

## OPINION ON REHEARING

PER CURIAM.

Counsel for respondents in the brief on Petition for Rehearing argue that (1) the correct decision of a trial court will not be reversed on appeal even if it is founded either in part or entirely upon wrong theories or premises, and (2) in the present cases the trial court had the right to dismiss the appeal from the land board because no proper certificate was attached.

Counsel's position seems to be that we should presume the trial court to have dismissed the appeal from the land board on the ground that the proper certificate was not attached. This would be violent presumption on our part in view of defendant's motion to dismiss, limited as it was to the ground that the appeal from the land board was not taken in time—especially, since the court's order was based solely on *said motion*. The order read, inter alia:

"That 'the motion to dismiss appeal' of the Appellees in the above-entitled cause as *filed herein* September 28, A.D., 1955, by said Appellees' attorneys of record, Messrs. Reynolds & Lathrop, by Otis Reynolds, Esq., be and the same hereby is granted, allowed and sustained." (Emphasis supplied.)

We think we should rather indulge in the presumption that the trial court acted upon the motion filed by the respondent and upon nothing else. This would seem to follow from the rule stated in the original opinion that a court will, as a matter of general practice, review only those issues and questions submitted to the trial court.

We stated in the former opinion that the "Memoranda of Decision * * * " of the trial court will not be considered in determining the issues herein. That

statement was not necessary to our decision; and we should, we think, leave that matter open for future consideration. In some jurisdictions, at least, the lower court's opinion may be considered to ascertain the grounds or reason for the decision of the trial court. 4 C.J.S., Appeal and Error § 734 at p. 1210; 3 Am.Jur., Appeal and Error § 595; Colorado Fuel & Iron Co. v. Adams, 14 Colo.App. 84, 60 P. 367, 375.

Assuming, without deciding, that in this case the trial court would upon return of the record to it have the right to dismiss the case for want of the signature of the land commissioner, the court without doubt would have a right—at least if a motion for diminution of the record were timely filed—to grant such motion and have the record corrected. In a case startlingly similar to the one at bar, the United States Supreme Court said:

"But in the case at bar the certificate not only begins with setting out the name and office of the clerk as the maker of the certificate, but has appended to it the seal of the court, and lacks only the clerk's signature to make it conform to the best precedents. The question presented is not one of no authentication, but of irregular or imperfect authentication; not of jurisdiction, but of practice. It is therefore within the discretion of this court to allow the defect to be supplied. Considering that the motion to dismiss was not made until it was too late to take a new appeal or writ of error, justice requires that the record should be permitted to be withdrawn for the purpose of having the certificate of authentication perfected by adding the signature of the clerk." Idaho and Oregon Land Improvement Co. v. Bradbury, 132 U.S. 509, 513, 10 S.Ct. 177, 33 L.Ed. 433.

See also 3 Am.Jur., Appeal and Error § 617, n. 9; English v. Smith, 71Wyo. 1, 253 P.2d 857.

Denied.